**In re AUTO OUTLET, INC., a Utah corporation, Debtor.**

**In re John David FOULKE aka/dba Holiday Rent-A-Car, John D. Foulke, Debtor.**

**BANK OF UTAH, a corporation, Plaintiff,**

**v.**

**AUTO OUTLET, INC., and John David Foulke, aka/dba Holiday Rent-A-Car, John D. Foulke, Defendants.**

Bankruptcy Nos. 85C–04208, 85C–04209. Civ. No. 86PC–0297.

United States Bankruptcy Court, D. Utah.

March 25, 1987.

---

Paul T. Kunz, Kunz, Kunz & Hadley, Ogden, Utah, for Bank of Utah, plaintiff.

Gerald S. Wight, Vlahos & Sharp, Ogden, Utah, for Auto Outlet, Inc. and John David Foulke, aka/dba Holiday Rent-A-Car, defendants.

GLEN E. CLARK, Bankruptcy Judge.

## PROCEDURAL BACKGROUND

This adversary proceeding came before the Court for trial on September 4, 1986 to determine the dischargeability of a particular debt of the defendants pursuant to 11 U.S.C. § 523(a)(6). Upon consideration of the evidence, arguments, and briefs presented by the parties, the Court renders the following opinion which shall constitute the findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over the subject matter of and parties to this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference of the United States District Court for the District of Utah dated July 10, 1984 entered pursuant to 28 U.S.C. § 157(a). This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I).

## FINDINGS

On December 12, 1985, John Foulke aka/dba Holiday Rent-A-Car ("John Foulke") and Auto Outlet, Inc. ("Auto Outlet") filed petitions for relief under Chapter 11 of the Bankruptcy Code. John Foulke is the sole shareholder and president of Auto Outlet.

Prior to filing these petitions, John Foulke and Auto Outlet were engaged in the business of selling and renting automobiles. Auto Outlet had a flooring line of credit in the amount of $50,000.00 with the Bank of Utah ("Bank"). When this line of credit became exhausted, Auto Outlet and John Foulke financed the purchase of a boat and trailer with the Bank. The purchase was evidenced by a promissory note and security agreement properly perfected on the boat and trailer.

Foulke purchased the boat and trailer for both sale and personal use. They were kept at all material times on the Auto Outlet sales lot.

On June 20, 1985, Foulke sold the boat and trailer to Chase Electric for $16,000.00. He placed the proceeds in the business checking account of Holiday Rent-A-Car at First Security Bank. The proceeds were commingled with other funds and spent. Thereafter, Foulke made three payments of $606.96 each under the note.

The Bank was not notified of the sale for three months. In fact, Foulke misrepresented the location of the boat and trailer to the Bank. Although Foulke failed to inform the Bank about this sale, he commonly sold the Bank's collateral and did not account for the proceeds for some time. Foulke did not consider the boat and trailer

to be part of the flooring agreement, but believed that they were part of inventory. Under the terms of the note, sale of the boat and trailer was prohibited unless considered inventory.

On March 24, 1986, the Bank filed a complaint objecting to the discharge of the indebtedness evidenced by the promissory note on the basis that Foulke wrongfully sold the boat and trailer and willfully and maliciously converted the proceeds.

## DISCUSSION

The operable section of the Bankruptcy Code in this case is section 523(a)(6) which provides:

> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

Although this section does not specifically mention conversion, "willful and malicious injury" was intended to include "willful and malicious conversion." 124 Cong. Rec.H.11096 (daily ed. Sept. 28, 1978); S. 17412 (daily ed. Oct. 6, 1978) (statement of Rep. Edwards and Sen. DeConcini). Conversion is generally defined as a wrongfully assumed "dominion over personal property by one person to the exclusion of possession by the owner and in repudiation of the owner's rights." *In re Pommerer*, 10 B.R. 935, 940 (Bkrtcy.D.Minn.1981).

> But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one.

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 330, 55 S.Ct. 151, 152, 79 L.Ed. 393 (1934) (citations omitted). To prevail under this section, the conversion must have been committed both willfully and maliciously. *In re DeRosa*, 20 B.R. 307, 313 (Bkrtcy.S.D.N.Y.1982).

As in other proceedings under section 523(a), the complaining creditor has the burden of proving each element of its claim. Bankruptcy Rule 4005. However, the standard of proof required to establish the elements of section 523(a)(6) has been an area of disagreement. Several courts have required proof of a willful and malicious injury by a preponderance of the evidence. *See In re Boren*, 47 B.R. 293 (Bkrtcy.W.D.Ky.1985); *Matter of Moccio*, 41 B.R. 268 (Bkrtcy.D.N.J.1984); *In re Baiata*, 12 B.R. 813 (Bkrtcy.E.D.N.Y.1981). Others have required clear and convincing evidence. *See In re Egan*, 52 B.R. 501 (Bkrtcy.D.Minn.1985); *In re DeRosa*, 20 B.R. 307; *Matter of Dean*, 9 B.R. 321 (Bkrtcy.M.D.Fla.1981).

To determine the proper standard of proof, examination of the purpose and intent behind the bankruptcy laws is appropriate. *In re Huff*, 1 B.R. 354, 357 (Bkrtcy. D.Utah 1979). One of the primary purposes is to give the honest debtor a fresh start in life, free from the burden of past financial misfortunes. *Id.* at 356 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). To effectuate this policy, exceptions to discharge place a heavy burden of proof on the plaintiff and should be strictly construed against the creditor and liberally in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Black*, 787 F.2d 503 (10th Cir.1986); *In re Huff*, 1 B.R. at 357.

The standard of proof traditionally required in civil cases is preponderance of the evidence. *In re DeRosa*, 20 B.R. at 310. Where dishonesty or fraud is at issue, courts have typically required the higher standard of clear and convincing evidence. *In re Huff*, 1 B.R. at 357.

> This higher standard is based "on the fact that fraud is regarded as criminal in its essence, and involves moral turpitude at least, while, on the other hand, the presumption is that all men are honest,

that individuals deal fairly and honestly, that private transactions are fair and regular, and that participants act in honesty and good faith. The presumption is against the existence of fraud and in favor of innocence, the presumption against fraud approximating in strength the presumption of innocence of crime." *Id.* (quoting 37 C.J.S. *Fraud* § 94 (1979)). This reasoning is equally applicable to those exceptions to discharge under the Bankruptcy Code dealing with fraud. *Id.* Although section 523(a)(6) "does not sound in fraud, the proof necessary to establish a 'willful and malicious conversion' must essentially involve a showing of intentional fraud, dishonesty, or deceit...." *In re DeRosa*, 20 B.R. at 311.

■ Accordingly, this Court holds that a willful and malicious conversion under section 523(a)(6) must be shown by clear and convincing evidence.

Section 17(2) of the Bankruptcy Act of 1898 excepted from discharge debts "for willful and malicious injuries to persons or property of another." The leading case in delineating the standard to be applied to this exception was *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). This case was subsequently interpreted by courts to stand for two legal propositions. *United Bank of Southgate v. Nelson*, 35 B.R. 766, 769 (N.D.Ill.W.D.1983).

First, *Tinker* was read to hold that the term willful can include reckless disregard of a duty. *United Bank of Southgate v. Nelson*, 35 B.R. at 769. "The Supreme Court's language, 'willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of· itself, and which necessarily causes injury' provides the justification for this interpretation." *Id.* (quoting *Tinker v. Colwell*, 193 U.S. at 487, 24 S.Ct. at 509). Consequently, courts excepted debts from discharge based on reckless or negligent conduct involving personal injuries arising out of automobile accidents. In *Den Haerynck v. Thompson*, 228 F.2d 72, 75 (1955) the Tenth Circuit excepted from discharge a debt for injuries suffered from the debtor's reckless driving.

Second, *Tinker* was construed to hold that constructive or implied malice was sufficient to establish malice under this exception, and that specific malice was not required. *Nelson*, 35 B.R. at 769.

> The law will, we think, imply that degree of malice in an act of the nature under consideration, which is sufficient to bring it within the exception mentioned.
>
> . . . .
>
> ... "Malice" in law, simply means a depraved inclination on the part of a person to disregard the rights of others, which intent is manifested by his injurious acts.
>
> . . . .
>
> ... [A] malignant spirit or a specific intention to hurt a particular person is not an essential element.

*Tinker*, 193 U.S. at 486–07, 24 S.Ct. at 508–09.

Section 17(2) was later amended to include section 17(a)(2) which provided for an exception "for willful and malicious conversion." The holdings of *Tinker* were also applied to debtors who disposed of encumbered property prior to bankruptcy. *See Bennett v. W.T. Grant Co.*, 481 F.2d 664 (4th Cir.1973).

Under section 523(a)(6), successor to section 17(a)(2), of the Bankruptcy Code, the accompanying legislative history indicates that *Tinker* to some extent has been overruled.

> Paragraph (5) provides that debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell*, 139 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), *reprinted in* 1978 U.S.Code Cong. & Adm.News 5787, 5963, 6320–21; S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.Code Cong. & Adm. News 5787, 5865.

To what extent the legislative history has overruled *Tinker* is the subject of disagreement under current case law.

One line of cases has read the legislative record to overrule the two holdings of *Tinker.* These courts have interpreted "willful" to mean intentional or deliberate and "malicious" to require an intent to harm. *See Matter of Lewis,* 17 B.R. 46 (Bkrtcy.W.D.Ark.1981); *In re Finnie,* 10 B.R. 262 (Bkrtcy.D.Mass.1981); *In re Hinkle,* 9 B.R. 283 (Bkrtcy.D.Md.1981); *In re Graham,* 7 B.R. 5 (Bkrtcy.D.Nev.1980); *In re Hodges,* 4 B.R. 513 (Bkrtcy.W.D.Va. 1980).

A second line of cases has interpreted the legislative history so as to overrule *Tinker* to the extent that willful was considered to include reckless disregard of duty. These courts interpreted willful to mean intentional or deliberate and malicious to be implied or constructive malice similar to what was required under *Tinker. See Matter of Chambers,* 23 B.R. 206 (Bkrtcy.W.D.Wis.1982); *Matter of Klix,* 23 B.R. 187 (Bkrtcy.E.D.Mich.S.D.1982); *In re DeRosa,* 20 B.R. at 311; *In re Fussell,* 15 B.R. 1016 (W.D.Va.1981).

*In re Compos,* 768 F.2d 1155 (10th Cir. 1985), involved an objection to the discharge of a debt from injuries suffered as a result of the debtor's drunk driving. The Bankruptcy Court for the District of Colorado held that although the debtor's conduct of driving while intoxicated constituted reckless disregard of the rights of others, the plaintiff failed to prove that the debtor acted with the specific intent to injure that is required under section 523(a)(6) to except a debt from discharge. This decision was affirmed by the District Court. On appeal to the Tenth Circuit, the plaintiff argued that reckless disregard was the standard to be applied under section 523(a)(6) and that, even if this section required proof of intentional conduct, all that need be proved was an intentional act which leads to injury and not an intent to injure a person or property. *Id.* at 1157.

In response to the first argument, the Tenth Circuit found that the legislative history clearly obviates the application of the reckless disregard standard to this section. *Id.*

As to the second argument, the Court wrote that "[s]ection 523(a)(6) makes debts 'for willful and malicious injury' nondischargeable. 'Willful' modifies 'injury.' Section 523(a)(6) does not except from discharge intentional acts which cause injury; it requires instead an intentional or deliberate injury. *In re Cecchini,* 37 B.R. 671, 675 (Bkrtcy. 9th Cir.1984)." [1]

The Tenth Circuit then went on to hold "that § 523(a)(6) requires proof of an *intent to injure* before a debt can be held nondischargeable under that provision of the Code." (emphasis added). *In re Compos,* 768 F.2d at 1159.

Intent to injure requires proof of an actual, subjective, conscious intent to harm. *In re DeRosa,* 20 B.R. at 313. *Contra, Wisconsin Finance Co. v. Ries,* 22 B.R. 343 (Bkrtcy.W.D.Wis.1982) (intent to harm requires only knowledge that harm will occur and to proceed in the face of that knowledge).

Section 523(a)(6) requires the proof of two elements: (1) willful and (2) malicious injury. As previously discussed, several courts have defined willful as requiring an intentional or deliberate act, and malicious as requiring an intent to injure. In *Compos,* however, the Tenth Circuit found that the phrase "willful and malicious injury" required an intent to injure. Nevertheless, this Court is of the opinion that the standard delineated in *Compos* requires first, implicitly, a finding of an intentional or deliberate act and second, a finding of a specific intent to harm.

Although *Compos* involved a claim based upon drunk driving, the Court is of the opinion that the intent to harm standard adopted by the Tenth Circuit is equally applicable to claims for conversion. The holding of *Compos* is written in very broad

---

**1.** *Cecchini* was subsequently reversed by the 9th Circuit. *See In re Cecchini,* 780 F.2d 1440 (1986).

language. In addition, the Court reached its decision based on the rationale of *In re Cecchini*, 37 B.R. 671 (Bkrtcy. 9th Cir. 1984), a case involving a claim based on conversion. Furthermore, even though *Compos* did not specially overrule prior Tenth Circuit decisions dealing with willful and malicious injury,[2] this Court is compelled to follow the Circuit's most recent decisions and to view *Compos* as overruling any prior decisions by implication.

 In this case, the Bank contends that Foulke wrongfully sold the boat and trailer and willfully and maliciously converted the proceeds. The terms of the promissory note relating to the boat and trailer prohibited sale unless considered inventory. At trial, Foulke testified that he knew that the boat and trailer did not relate to the flooring agreement, but bought them for sale and personal use. Furthermore, they were kept on the lot with the other inventory. The belief that the boat and trailer were considered inventory and could be sold was reasonable under the circumstances.

The sale of property subject to a security interest without payment of the debt may constitute willful and malicious conversion. *In re Clark*, 50 B.R. 122, 125 (Bkrtcy.D.N. D.1985). In this case, Foulke placed the sale proceeds in the Holiday Rent-A-Car checking account instead of remitting them to the Bank. This failure constituted an intentional or deliberate act because Foulke knew that the proceeds belonged to and should have been remitted to the Bank.

Whether this failure was also committed with an intent to injure turns on interplay of three facts. First, Foulke commonly kept sale proceeds and remitted them when cash flow permitted. Second, Foulke made several payments after the sale. Third, Foulke misrepresented the location of the boat and trailer subsequent to the sale.

Although Foulke's misrepresentation suggests an attempt to cover up his failure to remit the proceeds, the Court is of the opinion that this is not enough to support a finding of an intent to injure in light of the practice that had developed between the parties and the payments that were made after the sale.

## CONCLUSION

In accordance with the foregoing, to have a debt determined to be nondischargeable for willful and malicious injury under section 523(a)(6), the complaining creditor must prove by clear and convincing evidence an intentional or deliberate act and an intent to injure. In this case, the Bank established that the failure to remit the proceeds was willful, but failed to prove that this failure was malicious. Therefore, the debt owing to the Bank is dischargeable.

Counsel for the defendant is directed to prepare and submit a judgment in accordance with this memorandum opinion.

---

**2.** Prior to *Compos,* the Tenth Circuit appears to have construed willful and malicious to include a reckless disregard standard. *See In re Frank-* *lin,* 726 F.2d 606 (1984); *In re McGinnis,* 586 F.2d 162 (1978); *Den Haerynck v. Thompson,* 228 F.2d 72 (1955).