In re Gregory Alyan POSTA and
Mary Jones Posta,

C.I.T. FINANCIAL SERVICES, INC.,
Plaintiff-Appellant,

v.

Gregory Alyan POSTA, Mary Jones Posta, Defendants-Appellees.

No. 87-1477.

United States Court of Appeals,
Tenth Circuit.

Jan. 26, 1989.

Robert M. Duitch of Duitch & Johnson, P.C., Colorado Springs, Colo., for plaintiff-appellant.

Andrew J. Slee of Overholser & Slee, P.C., Montrose, Colo., for defendants-appellees.

Before LOGAN, LEAVY,* and BRORBY, Circuit Judges.

PER CURIAM.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir. R. 34.1.8. The cause is therefore ordered submitted without oral argument.

C.I.T. Financial Services, Inc. appeals the dismissal of its complaint objecting to the discharge in bankruptcy of a debt of Gregory Alyan Posta and Mary Jones Posta. CIT argues that the Postas' debt to CIT,

---

* The Honorable Edward Leavy, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

secured by a mobile travel trailer, is non-dischargeable under § 523(a)(6) of the Bankruptcy Code, because the Postas sold the trailer in violation of the terms of CIT's security agreement. In dismissing CIT's complaint, the bankruptcy court found that the Postas had not willfully disregarded CIT's rights by selling the trailer and that their debt to CIT was properly dischargeable. On appeal, the district court affirmed. We likewise affirm.

In 1983, the Postas purchased a mobile travel trailer from Washburn Enterprises in Lakewood, Colorado, financing $23,631 of the purchase price through CIT. The Postas executed a security agreement with CIT, granting CIT a security interest in the trailer. The agreement provided that the Postas could not sell, rent, or transfer the trailer, or move it from their home address unless CIT agreed in writing. The bankruptcy court found that neither Mr. nor Mrs. Posta read the security agreement before signing it.

Within a year after this purchase, payments on the trailer began to strain the Postas' finances. The couple determined that they would be unable to meet their other financial obligations and continue to make the payments on the trailer. Consequently, they moved the trailer from their home in Ridgeway, Colorado, to a dealership in Denver, attempting to lease it through the dealer. They also advertised the trailer for sale in Denver newspapers.

On October 7, 1984, the Postas were contacted by Mr. Ronald Swartz, who indicated that he was interested in buying the trailer. Mr. Swartz met with the Postas that day and, after some negotiation, agreed to purchase the trailer. That evening, the parties signed a sales agreement prepared by Mr. Swartz. As provided in the agreement, Mr. Swartz delivered $962.65 in cash to the Postas (representing their equity in the trailer plus the next monthly payment) and a promissory note for $22,245.00 (the remaining balance on their loan from CIT). To secure the note, Mr. Swartz executed a second deed of trust on certain condominium property located in Grand County, Colorado. He also purchased an insurance policy on the trailer, naming the Postas as additional insureds.

Mr. Swartz left that evening with the trailer. He returned the following morning to deliver a copy of the sales agreement and two football tickets which he had promised to Mr. Posta. After that morning, however, neither he nor the trailer were ever seen again. Mr. Swartz defaulted on his payments on the promissory note, and the Postas discovered that Mr. Swartz did not hold record interest in the property subject to the deed of trust securing the note. Despite their efforts, the couple was unable to locate Mr. Swartz at any of the addresses he had given them. They reported the incident to the appropriate authorities and to CIT, and unsuccessfully attempted to recover on the insurance policy covering the trailer. The Postas were then forced to default on their loan payments to CIT, and shortly thereafter they filed for bankruptcy.

CIT instituted the instant action in bankruptcy court on November 20, 1985, objecting to the discharge of the Postas' debt secured by the trailer. CIT alleged that, under § 523(a)(6) of the Bankruptcy Code, 11 U.S.C. § 523(a)(6) (1982), the debt was not dischargeable because the Postas had willfully and maliciously converted the travel trailer. The Postas responded by moving to dismiss the complaint, on the grounds that CIT had failed to allege that they had the requisite malicious intent. CIT then amended its complaint, and the Postas again moved for dismissal. After a hearing on the matter, the bankruptcy court ruled that the Postas' sale of the trailer was merely a technical conversion. It found no evidence that the Postas' actions were taken in conscious disregard of the rights of CIT and held that the conversion was not malicious. The district court affirmed on appeal, relying on this court's decision in *In re Compos*, 768 F.2d 1155 (10th Cir.1985).

In reviewing an order of the bankruptcy court, we apply the same standard of review as the district court. Findings of fact by the bankruptcy court are not set aside unless clearly erroneous; conclusions of

law are subject to *de novo* review. *In re Mullet*, 817 F.2d 677, 678–79 (10th Cir. 1987). In this case, the facts are relatively undisputed. The only issue before us is whether the bankruptcy court properly construed the term "malicious" under § 523(a)(6) of the Bankruptcy Code. CIT argues that the Postas' intentional sale of the trailer in violation of the terms of the security agreement was, by its nature, malicious. We disagree.

■ We begin by examining the relevant provision of the Bankruptcy Code. Section 523(a)(6) of the Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." Such injury includes the conversion of property subject to a creditor's security interest. *In re Pommerer*, 10 B.R. 935, 940 (Bankr.D. Minn.1981). For a debt to be nondischargeable under this section, however, the debtor's conversion of property must be both "willful" and "malicious." The creditor objecting to the discharge has the burden of proving both of these elements, *In re McGinnis*, 586 F.2d 162, 163 (10th Cir. 1978), by clear and convincing evidence, *In re Auto Outlet, Inc.*, 71 B.R. 674, 677 (Bankr.D.Utah 1987).

■ The "willful" element is straightforward. It simply addresses whether the debtor intentionally performed the basic act complained of. *In re Egan*, 52 B.R. 501, 506 (Bankr.D.Minn.1985). "Willful" conduct is conduct that is volitional and deliberate and over which the debtor exercises meaningful control, as opposed to unintentional or accidental conduct. *In re Clayburn*, 67 B.R. 522, 525 (Bankr.N.D. Ohio 1986); *In re Nelson*, 67 B.R. 491, 497 (Bankr.D.Minn.1985). Thus, acts caused by the debtor's negligence or recklessness are not encompassed by this exception. *In re Compos*, 768 F.2d at 1158; *In re Egan*, 52 B.R. at 506.

In this case, there seems to be little question but that the Postas voluntarily and intentionally sold the trailer; so their conduct was "willful." The issue is, instead, whether in doing so, they acted maliciously. CIT asserts that when a debtor intends to do an act which results in harm to his creditor, such conduct is "malicious." Consequently, because the Postas intentionally sold the trailer, and because the sale was in violation of the security agreement and ultimately harmed CIT, CIT contends that the "malicious" element is satisfied. We disagree.

■ Were we to accept CIT's argument, nearly any intentional conduct would fall within this exception to discharge, and the word "malicious" in this section would be rendered meaningless. Statutes should be construed to give effect to every word Congress has used. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). Although we agree that conduct which violates the rights of a creditor is wrongful, we refuse to infer that it is, by its very nature, "malicious." Instead, the focus of the "malicious" inquiry is on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor, "not on abstract and perhaps moralistic notions of the 'wrongfulness' of the debtor's act." *In re Egan*, 52 B.R. at 507 n. 4. Thus, the Postas' sale of the trailer was not "malicious" simply because it violated the terms of the security agreement.

■ Under § 523(a)(6), the debtor's malicious intent can be shown in two ways. In the rare instances in which there is direct evidence that the debtor's conduct was taken with the specific intent to harm the creditor, the malice requirement is easily established. *See, e.g., In re Boren*, 47 B.R. 293 (Bankr.W.D.Ky.1985); *In re Major*, 44 B.R. 636 (Bankr.W.D.Mo.1984). More commonly, however, malicious intent must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights. *In re Nelson*, 67 B.R. at 497; *In re Dever*, 49 B.R. 329, 332 (Bankr.W.D.Ky. 1984). Such knowledge can be inferred from the debtor's experience in the business, his concealment of the sale, or by his admission that he has read and understood the security agreement. *In re Cullen*, 71 B.R. 274, 282 (Bankr.W.D.Wis.1987); *In re*

*Gantt,* 56 B.R. 852, 857 (Bankr.E.D.Va. 1985); *United Bank of Southgate v. Nelson,* 35 B.R. 766, 776 (N.D.Ill.1983).

We are not persuaded by CIT's argument that the bankruptcy court misconstrued the term "malicious" as to require actual malice, or a specific intent to harm the creditor. Rather, the court correctly looked to whether the Postas had willfully disregarded the rights of CIT in making the sale. The court noted that the Postas were relatively inexperienced in business matters, that they had difficulty in understanding business concepts, and that they had not read the security agreement. *See, e.g., In re Walker,* 44 B.R. 1, 3 (Bankr.S.D. Ohio 1983); *In re Scarbaci,* 34 B.R. 344 (Bankr.S.D.Fla.1983); *In re Casselli,* 4 B.R. 531, 535 (Bankr.C.D.Cal.1980). The evidence shows that, at all times, the Postas intended to fulfill their loan obligations to CIT by applying the proceeds of Mr. Swartz' note to the loan. *See, e.g., In re Camp,* 11 B.R. 85, 89 (Bankr.N.D.Ga.1981); *In re Harris,* 8 B.R. 88, 93–94 (Bankr.M.D. Tenn.1980). They did not conceal the sale from CIT and, in fact, requested CIT's assistance when it appeared their arrangement with Mr. Swartz had gone sour. *Compare In re Fields,* 44 B.R. 322, 330 (Bankr.S.D.Fla.1984). We agree with the bankruptcy court that, in light of these facts, at most, all that occurred was a "technical conversion." Technical conversions do not fall within the § 523(a)(6) exception to discharge. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 331–32, 55 S.Ct. 151, 152–53, 79 L.Ed. 393 (1934); *In re McGinnis,* 586 F.2d at 163.

CIT attempts to distinguish this case from other cases involving technical conversions by arguing that, because it did not acquiesce in any way in the Posta's sale of the trailer, the court may not excuse the Postas' disregard of the terms of the security agreement. This attempted distinction is illusory. The issue of a creditor's acquiescence comes into play only in those cases in which the debtor has knowledge of the creditor's limitations on the sale of its collateral but, because of some conduct by the creditor, is led to believe the sale would nevertheless be permissible. *See, e.g., Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393; *Ford Motor Credit Co. v. Owens,* 807 F.2d 1556 (11th Cir.1987); *In re McGinnis,* 586 F.2d 162. In this case, however, the threshold question, as noted above, is whether the Postas had *any knowledge* that the sale would violate the terms of the security agreement. The district court found that the Postas had no knowledge of such terms of the security agreement. It properly concluded that, because they did not knowingly violate CIT's rights by selling the trailer, the Postas' conversion of CIT's property was not "malicious." That CIT did not acquiesce in the sale was therefore irrelevant.

The order of the United States District Court for the District of Colorado is AFFIRMED.