**In re Douglas Carl SHARP and Sharon Louise Sharp, Debtors.**

**BORG–WARNER ACCEPTANCE CORPORATION, Plaintiff/Appellee,**

**v.**

**Douglas Carl SHARP and Sharon Louise Sharp, Defendants/Appellants.**

**BAP No. NC 88–2104 MoAsP. Bankruptcy No. 987–00053. Adv. No. 987–0050.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 24, 1989.

Decided Aug. 11, 1989.

Kevin J. Sharp, Stockton, Cal., for defendants/appellants.

Ronald Sargis, Hefner, Stark & Marios, Sacramento, Cal., for plaintiff/appellee.

Before MOOREMAN, ASHLAND and PERRIS, Bankruptcy Judges.

MOOREMAN, Bankruptcy Judge:

This appeal arises out of the bankruptcy court's Judgment which held that a certain debt totaling approximately $14,000 was nondischargeable under 11 U.S.C. § 523(a)(6).

## FACTS

Douglas Sharp was the president and general manager of Mother Lode Marine ("MLM"), which was involved in the business of boat sales, rentals and repairs. In order to purchase inventory, MLM obtained financing from appellee Borg–Warner Acceptance Corp. ("BWAC"). Pursuant to the financing agreement, MLM executed an Inventory Security Agreement granting BWAC a security interest in collateral, inventory and proceeds of the inventory. Under the terms of the security agreement, MLM was required to remit to BWAC the "cost price" of each item of financed inventory upon the sale thereof. In his capacity as president/general manager, Mr. Sharp established a "trust" account into which all proceeds from the sale of MLM's inventory were deposited and payments to BWAC were disbursed. Mr. Sharp was the only person responsible for the sale of inventory, the deposit of the sale proceeds and the remittance of the proceeds to BWAC.

In June 1986, BWAC conducted a regular inventory inspection or "floor check" of MLM and it was determined that inventory had been sold by MLM in which the cost price of approximately $14,000 was due BWAC. At that time, Mr. Sharp delivered two checks to BWAC which were later returned for non-sufficient funds. These checks had not been written on the "trust account."

In July, 1986, MLM filed a Chapter 11 petition which was later converted to Chapter 7. Eventually, Mr. Sharp also filed his individual bankruptcy petition, wherein the underlying complaint seeking to have the debt held nondischargeable was filed against Mr. Sharp by BWAC.

After a trial on the matter, the bankruptcy court concluded that Mr. Sharp's conduct[1] constituted a conversion and was "willful and malicious" conduct thereby rendering the debt nondischargeable pursuant to § 523(a)(6). The bankruptcy court based its conclusions on the undisputed facts that Mr. Sharp was the sole person responsible for the receipt and disposition of funds and that Mr. Sharp had failed to segregate the sale proceeds as required by the security agreement.

## DISCUSSION

In a case similar to the instant appeal, the Bankruptcy Appellate Panel recently set forth the recognized standard that for purposes of § 523(a)(6), the issues to be determined are: "1–whether the appellant committed a wrongful and intentional act; 2–whether such action produced harm; and 3–whether such action was without just cause or excuse." *In re Manser*, 99 B.R. 434, 436, (9th Cir. BAP 1989) (citing *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir. 1986)). In light of the above issues, this Panel will apply a clearly erroneous standard of review to the bankruptcy court's findings of fact and a de novo standard of review to conclusions of law. *See, e.g.* Bankruptcy Rule 8013; *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir. 1985).

■ In the instant case, the appellant Mr. Sharp contends that no wrongful act occurred and that at most he mistakenly relied on the bank balance calculated by his accountant in issuing the checks which were eventually dishonored. Issuance of the dishonored checks, however, was not the basis of the bankruptcy court's finding of nondischargeability. Rather, the appellant's wrongful act was the misappropriation and conversion of the BWAC's funds by his *failure to segregate and turn over* said funds as required by the security agreement.[2] Mr. Sharp made no attempt

1. Although Mrs. Sharp was named as a defendant, the judgment holding the underlying debt nondischargeable, held that the judgment was against Mr. Sharp personally.

2. It is generally recognized that the conversion of property subject to a creditor's security interest *may* form the basis for a nondischargeability cause of action under § 523(a)(6). *See In re*

at the trial on the matter or in his brief before this Panel to account for the monies which should have been segregated into the trust account for payment to BWAC. Nor does Mr. Sharp dispute that he failed to segregate the funds into the trust account as required by the security agreement.[3] Such unexplained failure is sufficient to support the bankruptcy court's conclusion that Mr. Sharp's actions were wrongful and intentional as required by § 523(a)(6) and *In re Cecchini.* See *In re Manser,* 99 B.R. at 436; *Chrysler Credit Corporation v. Rebhan,* 842 F.2d 1257 (11th Cir.1988); *Ford Motor Credit Co. v. Owens,* 807 F.2d 1556, 1559-60 (11th Cir.1987).

■ The appellant next argues that his actions should be *excused* from a finding of nondischargeability because of: 1–the accountant's mistakes as to the balance in the account from which the checks were written to pay BWAC; 2–the decision of the other officers to file a bankruptcy over his objection; and 3–the decision of the "other corporate officers to lock [him] out of the business and to remove his ability to pay BWAC." Even assuming that Mr. Sharp sufficiently established the above contentions, they would not necessarily constitute a sufficient justification or excuse for Mr. Sharp's *failure to segregate* the proceeds from the sale of the inventory subject to the BWAC's security agreement.

Mr. Sharp's unexplained failure to retain the proceeds into the trust account and then remit those funds to BWAC support a conclusion that Mr. Sharp knew or reasonably should have known, that his actions would "necessarily produce harm." *Cecchini,* 780 F.2d 1443; *In re Shah,* 96 B.R. 290, 295 (Bankr.C.D.Cal.1989). Accordingly, this Panel cannot say that the bankrupt-

cy court's findings are clearly erroneous. We, therefore, conclude that the bankruptcy court did not err in holding the instant debt nondischargeable pursuant to § 523(a)(6).

Based on the foregoing, the judgment of the bankruptcy court is AFFIRMED.

---

*Posta,* 866 F.2d 364, 367 (10th Cir.1989); *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1262–64 (11th Cir.1988); *In re Shah,* 96 B.R. 290, 295 (Bankr.C.D.Cal.1989).

**3.** This important fact is a major distinguishing point between the instant case and the recent case of *In re Shah,* 96 B.R. 290, 295 (Bankr.C.D. Cal.1989), involving a similar complaint for nondischargeability. In a well reasoned decision clarifying *Cecchini,* Judge Zurzolo determined that the secured creditor was not entitled to a nondischargeability judgment under

§ 523(a)(6) because, "Defendants deposited Plaintiff's cash proceeds collateral in their general business account, *as they always had done.* They used those commingled funds to pay ordinary expenses of their business, including, at one point, completely repaying Plaintiff." *Id.* (emphasis added). Additionally, the bankruptcy court in *Shah* determined that the Plaintiff had waived its "cash segregation protections." *Id.* None of these important factors appear to have been established in the instant case.