In re Melinda Sue GROSHANS and Larry Bryon Groshans, Debtors.

Warren H. WAGNER, Personal Representative of the Estate of Marvin A. Wagner, and Harvey H. Wagner, Plaintiffs–Appellees,

v.

Larry Bryon GROSHANS and Melinda Sue Groshans, Defendants–Appellants.

No. 89–K–594.
Bankruptcy No. 88 B 4081 J.
Adv. No. 88 E 808.

United States District Court,
D. Colorado.

May 9, 1990.

Thomas H. Keyse, James T. Burghardt, Moye, Giles, O'Keefe, Vermiere & Gorrell, Denver, Colo., for plaintiffs-appellees.

Alvin R. Wall, Holyoke, Colo., for defendants-appellants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The debtor, Larry Bryon Groshans, appeals a bankruptcy court decision denying the discharge of his debt to Harvey H. Wagner and the estate of Marvin A. Wagner under § 523(a)(6) of the Bankruptcy Code.[1] Mr. Groshans makes two arguments in this appeal. First, he argues that the bankruptcy court erred in determining that Colorado's dead man's statute applied in the proceedings below to determine dischargeability of his debt to the Wagners. Had the bankruptcy court not applied the statute, Mr. and Mrs. Groshans would have

---

1. This action was originally brought against both Mr. and Mrs. Groshans, who have jointly filed for bankruptcy. After trial, the complaint was dismissed as to Mrs. Groshans, so only Mr. Groshans is a party to this appeal.

testified that Marvin Wagner consented to their selling of certain cattle which was collateral for the debt, thereby establishing that no § 523(a)(6) violation occurred. Second, even disregarding this alleged error, Mr. Groshans argues that the Wagners' complaint should have been dismissed under Bankr.R. 7041 because the creditors did not establish the essential elements of a § 523(a)(6) claim. I reverse on the first argument and affirm on the second.

## I. *Facts.*

In April, 1988, Larry and Melinda Groshans filed for bankruptcy under Chapter 7 of the Code. The Groshans were in the business of cattle raising and farming. On or about December 12, 1983, the Groshans purchased approximately 138 head of cattle from Marvin and Harvey Wagner. They executed a promissory note to the Wagners in the original principal amount of $36,537. The note provided for annual payments of $7,307.40 over five years. As collateral for the note, the Wagners took a security interest in the cattle, which was properly perfected. The security agreement executed by the Groshans restricted the further encumbrance or sale of the cattle and required that it be kept at the Groshans' address and not moved without the Wagner's prior written consent.

Over the next several years, the Groshans experienced financial difficulties. They were able to make one partial payment only on the note, on February 14, 1986. The Wagners loaned the Groshans additional money to buy land and permitted them to live rent-free on land the Wagners owned. In 1985, to avoid foreclosure of his farming operations, the Groshans sold the cattle to a third party to raise additional funds. The Groshans contended that Marvin Wagner knew of the sale and consented to it. Marvin Wagner died in October, 1987.

After the Groshans declared bankruptcy in April, 1988, Harvey Wagner and the estate of Marvin Wagner (hereinafter, the Wagners) filed the instant action on September 28, 1988, seeking to have the Groshans' debt to them declared nondischargeable under § 523(a)(4) and § 523(a)(6) of the Code.[2] After the matter was set for trial, the Wagners filed a motion in limine on February 24, 1989 to prevent the Groshans from "testifying to facts occurring prior to the death of the deceased Marvin A. Wagner and concerning conversations, transactions or other dealings which occurred within the deceased person's presence." R.Vol. I., Doc. 5 at 1. The motion in limine was based on Colorado's dead man's statute, Colo.Rev.Stat. § 13-90-102 (1987), which the Wagners argued was applicable to the dischargeability proceeding.

On March 15, 1989, after a hearing in the matter, the bankruptcy court granted the motion in limine. Immediately thereafter, trial was held on the Wagners' complaint, and the court dismissed the complaint as to Mrs. Groshans but found the debt to be nondischargeable as to Mr. Groshans under § 523(a)(6). Mr. Groshans now appeals.

## II. *Issues.*

### A. *Applicability of Dead Man's Statute.*

Under Bankr.R. 9017 and Fed.R. Evid. 1101, the Federal Rules of Evidence apply to bankruptcy judges and to "proceedings and cases under title 11." Fed.R. Evid. 1101(a), (b); Bankr.R. 9017. Questions concerning the competency of witnesses to testify in proceedings are governed by Fed.R.Evid. 601. This rule states:

> Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.

Fed.R.Evid. 601.

There is only one case in which a court has considered the applicability of a state's dead man's statute under Rule 601 in a

---

**2.** Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(4). Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to property of another entity." *Id.* § 523(a)(6).

bankruptcy proceeding. In *Diamond Furnishing Co. v. Estate of Breymier (In re Diamond Furnishing Co.)*, 42 B.R. 638 (Bankr.M.D.Pa.1984), the corporate debtor, the Diamond Furnishing Company, brought an action to recover the purchase price of certain furniture bought by the decedent, Mr. Breymier. At trial, Diamond sought to introduce the testimony of one of its corporate officers. The estate objected to the testimony, contending it was barred by Pennsylvania's dead man's statute because Mr. Breymier had died.

In analyzing this problem, the court first noted that Fed.R.Evid. 601 applied. It went on to reason:

> The pivotal factor in determining whether the Court must apply a State's Dead Man Statute pursuant to Rule 601 is establishing whether the substantive issue in the case will be decided under State or Federal law. We must note at this point that neither party argued whether the substantive issue was State or Federal. With respect to non-Federal substantive issues, the Federal Courts are bound by Rule .601's reference to State Rules of Competency. On the other hand, if this case is to be determined on Federal substantive issues, then the broad rule of competency embodied in the first line of Rule 601 will apply, making virtually all witnesses competent to testify.

*Id.* at 640. Although it considered Diamond's claim in the case to be primarily one based on state law, the court ultimately did not decide the question. *Id.* Instead, it found that the state statute, even if applicable, would not bar the officer's testimony because the officer had no interest adverse to the decedent. *Id.* at 641.

Although *In re Diamond Furnishing Co.* is not helpful in resolving the central issue in this case, its rationale is in line with other federal court decisions addressing this issue. *See generally* 3 J. Weinstein, *Weinstein's Evidence* ¶ 601.02 (1988) (and cases cited therein). Thus, to resolve

whether Colorado's dead man's statute applies here, the determining factor is "whether state law supplies the rule of decision with respect to the particular claim or defense at issue." *Hanes v. Mid–America Petroleum, Inc.*, 577 F.Supp. 637, 644 (W.D.Mo.1983). The Wagners argue that the pivotal issues in this case "are contract issues to which state law applies," such as "whether the appellant converted the collateral and whether appellant had authority to sell the collateral and/or authority not to remit the proceeds of such sale to Appellees," which are governed by Colorado's Uniform Commercial Code. Appellees' Brief at 7, 8. Therefore they contend that the bankruptcy court properly applied Colorado's dead man's statute.

While it is true that these issues came into play to a limited extent in this case,[3] they were not central to the dispute underlying the applicability of the dead man's statute. The central issue was one of intent: whether the Groshans' conversion of the Wagners' property was "willful and malicious," as required by § 523(a)(6). The case law indicates that federal, not state, law supplies the rule of decision in this instance.

The Tenth Circuit has recently addressed the meaning of the terms "willful" and "malicious" under § 523(a)(6) of the Code.

> The "willful" element is straightforward. It simply addresses whether the debtor intentionally performed the basic act complained of. "Willful" conduct is conduct that is volitional and deliberate and over which the debtor exercises meaningful control, as opposed to unintentional or accidental conduct. Thus, acts caused by the debtor's negligence or recklessness are not encompassed by this exception.

*C.I.T. Fin. Servs., Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989) (citations omitted). The court then confronted the creditor's argument that it could establish the malice element by simply showing that the debtor intended to do

---

**3.** I note that "whether the appellant converted the Collateral" was really *not* at issue in this case. The Groshans admitted that they sold the collateral, the only question was whether Marvin Wagner gave them permission to do so.

an act which resulted in harm to the creditor, such as selling collateral in violation of a security agreement.

Were we to accept CIT's argument, nearly any intentional conduct would fall within this exception to discharge, and the word "malicious" in this section would be rendered meaningless.... Although we agree that conduct which violates the rights of a creditor is wrongful, we refuse to infer that it is, by its very nature, "malicious." Instead, the focus of the "malicious" inquiry is on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor, "not on abstract and perhaps moralistic notions of the 'wrongfulness' of the debtor's act." Thus, the Posta's sale of the [collateral] was not "malicious simply because it violated the terms of the security agreement.

*Id.*

The above language in *In re Posta* makes clear that federal bankruptcy law, not state law, gives meaning to the phrase "willful and malicious." Thus, following the Wagners' argument, even if they could establish a breach of state contract law or a violation of the state's U.C.C., this does not meet their burden of showing malice under § 523(a)(6). At a minimum, the Groshans must have acted in knowing disregard of their creditors' rights. *Id.* Consequently, since the issue is determined under federal bankruptcy law, and since the Groshans proffered testimony would have negated any inference of malice by showing they had their creditor's approval to sell the cattle, the testimony should have been permitted under Fed.R.Evid. 601. Whether such testimony would be found credible by the trier of fact is an entirely different matter. The bankruptcy court erred in applying the Colorado dead man's statute to exclude the testimony, and the case is therefore remanded for retrial.

**4.** Specifically, Harvey Wagner and Warren Wagner (personal representative of Marvin's estate), testified that Mr. Groshans' concealed from

### B. *Dismissal Under Bank.R. 7041.*

■ Mr. Groshans additionally argues that the Wagners did not prove by clear and convincing evidence the essential elements of their case under § 523(a)(6), and therefore the case should have been dismissed under Bankr.R. 7041 (analogous to Fed.R.Civ.P. 41(b)). Groshans' argument focuses on the "malicious" element of the § 523(a)(6) claim. He contends that there is no evidence in the record that his sale of the cattle was intended to harm the Wagners.

I have read the entire transcript. There was colorable evidence upon which the court could find that the Mr. Groshans' conduct was malicious. In particular, there was evidence upon which the court could infer that Mr. Groshans knew that he was not to have sold the cattle without the Wagners' prior consent, and that absent any other justification for his action (such as Marvin Wagner's consent), he sold the collateral in knowing disregard of the Wagners rights.[4] Mr. Groshans' second argument does not present grounds for reversal.

IT IS ORDERED that judgment is affirmed in part, reversed in part. The case is remanded for a new trial.

them the fact that he had sold the cattle and not replaced them with additional collateral.