The RANDALL BANK, Plaintiff,

v.

Laverne J. MELHUS, Defendant.

No. 88-4254-R.

United States District Court,
D. Kansas.

Aug. 1, 1990.

Jan Hamilton, Hamilton, Peterson, Tipton & Keeshan, Topeka, Kan., for plaintiff.

William H. Griffin, Topeka, Kan., Anne L. Baker, Davis, Wright, Unrein, Hummer

& McCallister, Topeka, Kan., for defendant.

Eric C. Rajala, Overland Park, Kan., Trustee.

Carol Park Wood, Wichita, Kan., U.S. Trustee.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an appeal from an order of the bankruptcy court. The bankruptcy court held that a portion of appellee/debtor Laverne J. Melhus's debt to the Randall Bank was dischargeable. The Bank contends that the bankruptcy court erred in reaching that determination. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

Randall Bank is a banking institution located in Jewell County, Kansas. The debtor is a farmer in Republic County, Kansas. The Bank and the debtor had a banking relationship for about 15 to 20 years. Funds were last advanced by the Bank to the debtor for his farming operation in 1982. The debtor continued to pay interest on his loans with the Bank through January 2, 1986. On that date, defendant signed a promissory note to the Bank in the amount of $234,680.17. He subsequently signed a security agreement and financing statement which included government farm program payments and general intangibles as collateral securing the Bank's debt. The debtor had previously participated in government farm programs and had received cash payments pursuant to that participation. These payments, however, had not been pledged as collateral in prior years. Debtor had used the proceeds in the past to make payments on the interest and principal of his loans with the Bank.

In June, 1986, because the Bank would not advance additional operating capital, debtor rented his farmland to his son. The son planted and harvested the 1986 crops. In March, 1987, the debtor and his son signed up for the 1987 price support and production adjustment programs. The debtor participated as a landowner while the son participated as an operator. On April 14, 1987, the debtor received a government check for cash payment in excess of $3,000 and a generic payment-in-kind (PIK) certificate of similar amount. These advance payments were made as a result of debtor's participation in the farm program as a landlord. The debtor filed for bankruptcy under Chapter 12 on May 7, 1987. Prior to the bankruptcy filing, the leasing arrangement between debtor and his son was terminated. Debtor indicated that this was done because he needed to farm all of the land in order to comply with his Chapter 12 plan.

The debtor started planting corn in May. In order to fulfill his obligations under the government program, debtor was required to plant his crop, leave certain areas as set-aside, and not overplant. At the first meeting of creditors in debtor's bankruptcy, there was a discussion of defendant's rights in the government farm program. It was determined that the payments received by the debtor's son should be returned for reissuance in accordance with the revised arrangement between the debtor and his son. On August 31, 1987, debtor received a cash payment in excess of $3,000 and a generic PIK certificate of similar amount. The debtor spent the government payments to pay the expenses of planting and harvesting a crop in 1987. The debtor did not inform the Bank of the use of the government payments, nor did the debtor attempt to get the Bank's prior consent.

The Bank filed a complaint in debtor's bankruptcy to determine the dischargeability of the government payments under 11 U.S.C. § 523(a)(6). The bankruptcy court concluded that the debtor's debt to the Bank was dischargeable. The bankruptcy court found that the debtor had converted the Bank's collateral, but that the conversion was not willful and malicious as required by § 523(a)(6). The bankruptcy court reasoned as follows:

> In this case, the debtor freely admits he expended the funds secured to the Bank without authorization or knowledge of the Bank. Such evidence establishes that debtor committed a conversion of the Bank's collateral. However, the

Court cannot find from the evidence presented that the debtor acted with the requisite willful and malicious intent in converting the Bank's property. The Court believes debtor's testimony that he used the funds in his farm operation and to further compliance with the feed grain program. The Feed Grain Program requires farmers to comply with certain requirements, the failure of which leads to disentitlement of the program payments. In light of that fact, and the lack of evidence showing a contrary intent, the Court finds that the Bank has failed to sustain its burden of proof.

The Bank contends that the bankruptcy court erred in its conclusion that the debtor did not act willfully and maliciously. The Bank argues that the record shows by clear and convincing evidence that the debtor willfully and maliciously converted government farm program payments in which the Bank had a perfected security interest. The Kansas Bankers Association has filed an *amicus curiae* brief in support of the Bank's position. The debtor contends that the bankruptcy court properly applied the facts to the law and reached the appropriate conclusion.

The standards of review are well-settled. The bankruptcy court's findings of fact must be upheld unless they are clearly erroneous. Bankr.R. 8013; *In re Mullet*, 817 F.2d 677, 678 (10th Cir.1987). The bankruptcy court's legal determinations are reviewed *de novo. In re Yeates*, 807 F.2d 874, 877 (10th Cir.1986).

The Tenth Circuit issued an opinion following the bankruptcy court's decision in this case that provides considerable guidance in determining the issues before the court. In *In re Posta*, 866 F.2d 364 (10th Cir.1989), the Court considered whether the debtors, who sold a trailer that was pledged to a creditor without the creditor's permission, had acted "willfully and maliciously" under § 523(a)(6). The Court began as follows:

For a debt to be nondischargeable under this section ... the debtor's conversion of property must be both "willful" and "malicious." The creditor objecting to the discharge has the burden of proving both of these elements, *In re McGinnis*, 586 F.2d 162, 163 (10th Cir.1978), by clear and convincing evidence, *In re Auto Outlet, Inc.*, 71 B.R. 674, 677 (Bankr.D.Utah 1987).

*Id.* at 367.

The Court then provided the following definition of "willful":

The "willful" element is straightforward. It simply addresses whether the debtor intentionally performed the basic act complained of. *In re Egan*, 52 B.R. 501, 506 (Bankr.D.Minn.1985). "Willful" conduct is conduct that is volitional and deliberate and over which the debtor exercises meaningful control, as opposed to unintentional or accidental conduct. *In re Clayburn*, 67 B.R. 522, 525 (Bankr. N.D. Ohio 1986); *In re Nelson*, 67 B.R. 491, 497 (Bankr.D.Minn.1985). Thus, acts caused by the debtor's negligence or recklessness are not encompassed by this exception. *In re Compos*, 768 F.2d [1155] at 1158 [(10th Cir.1985)]; *In re Egan*, 52 B.R. at 506.

*Id.*

The Court then proceeded to the "malicious" element of § 523(a)(6). The Tenth Circuit rejected the argument that the debtors' sale of the trailer was malicious simply because it violated the terms of the security agreement. The Court set forth the following guidelines for determining whether malicious conduct has occurred:

Under § 523(a)(6), the debtor's malicious intent can be shown in two ways. In the rare instances in which there is direct evidence that the debtor's conduct was taken with the specific intent to harm the creditor, the malice requirement is easily established. *See, e.g., In re Boren*, 47 B.R. 293 (Bankr.W.D.Ky. 1985); *In re Major*, 44 B.R. 636 (Bankr. W.D.Mo.1984). More commonly, however, malicious intent must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights. *In re Nelson*, 67 B.R. at 497; *In re Dever*, 49 B.R. 329, 332 (Bankr.W.D.Ky.

1984). Such knowledge can be inferred from the debtor's experience in the business, his concealment of the sale, or by his admission that he has read and understood the security agreement. *In re Cullen*, 71 B.R. 274, 282 (Bankr.W.D. Wis.1987); *In re Gantt*, 56 B.R. 852, 857 (Bankr.E.D.Va.1985); *United Bank of Southgate v. Nelson*, 35 B.R. 766, 776 (N.D.Ill.1983).

*Id.*

The Tenth Circuit ultimately concluded in *Posta* that the debtors had·not acted willfully and maliciously. The Court noted that the debtors were inexperienced in business matters, had not attempted to conceal the sale of the trailer from the creditor, and that they had not read the security agreement. *Id.* at 368.

An application of *Posta* to the facts found by the bankruptcy court requires reversal of the bankruptcy court's order. The facts before the bankruptcy court showed clearly that the debtor read and understood the security agreement and the financing statement. The debtor understood that the government payments had been pledged to the Bank as collateral for his note. The debtor had dealt with the Bank for many years and was obviously familiar with loan transactions. Despite this experience and his knowledge of the security agreement, he proceeded to use the government farm program proceeds to operate his farm. This conduct meets the standard for willful and malicious action under § 523(a)(6) as defined in *Posta*. The bankruptcy court suggested that the Bank had not met its burden of proof because the bankruptcy court believed the debtor when he testified that he used the government funds in his farm operation. This court does not find that such testimony, even if accepted as true, is sufficient, in light of the other testimony, to avoid a finding of willful and malicious conduct. *See, e.g., In re Padgett*, 105 B.R. 665 (Bankr.E.D.Okla.1989); *In re Sandman*, 68 B.R. 784 (Bankr.D.Mont.1987); *In re Pommerer*, 10 B.R. 935 (Bankr.D.Minn.1981). Here, the debtor intentionally converted collateral knowing that harm to the Bank would result. Such conduct is willful and malicious and requires the sanction of non-dischargeability under § 523(a)(6). The bankruptcy court's order is reversed, and this case is remanded to the bankruptcy court to enter judgment in favor of the Bank.

IT IS SO ORDERED.