In re Jimmy Ray PULLEY.

Jimmy Ray PULLEY, Plaintiff,

v.

Jerry LANGFITT, Defendant.

Bankruptcy No. 93–16199 S.
Adv. No. 94–6529.

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

Dec. 5, 1995.

John Ogles, Jacksonville, AR, for Jimmy Ray Pulley.

Basil Hicks, Jr., N. Little Rock, AR, for Jerry Langfitt.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the trial on the merits of the complaint to determine dischargeability. The debtor reopened his bankruptcy case to file this adversary proceeding which requests that the Court find a debt be declared discharged. In July 1993, the creditor Jerry Langfitt ("Langfitt") obtained a judgment against the debtor in the amount of $131,360.61 from the Superior Court of the State of California. Purportedly unaware of this debt, the debtor did not list this debt on his bankruptcy petition, filed on May 11, 1993. The creditor Jerry Langfitt defends on the grounds that the debt was for wilful and malicious injury such that it is nondischargeable pursuant to section 523(a)(3), (6).

### I.

In 1988, Langfitt stored a GM bus, a 28–foot cabin cruiser, a Ford Ranchero and other items of personal property at a storage lot operated by a friend, James McFarland. When Langfitt last saw his property on the lot it was in good condition. In January 1989, Langfitt learned that McFarland no longer possessed the property and Jimmy Ray Pulley was in control of the storage lot. Since he passed the lot to and from his way to work each day, it was convenient for him to stop and inquire after his property, whereupon he met Pulley. At the first visit, and during all subsequent visits, Pulley only spoke through the locked gates or came out of the gates. Langfitt was not permitted to enter the premises. Pulley and Langfitt exchanged business cards and Pulley advised Langfitt that he could not release any property because McFarland had filed bankruptcy and his lawyer was checking into ownership and running checks with the California Department of Motor Vehicles. Langfitt advised Pulley that the registration to the vehicles, showing ownership, was located in each

of the vehicles. The property was further identifiable by the personalized license plate and signage on the vehicles. The parties closed their conversation on friendly terms.

Inasmuch as he passed the lot each day on his way to work, Langfitt stopped often to inquire as to when his property would be released to him. Pulley continued with the story that his lawyer was checking on liens and ownership status. On February 21, 1989, when Langfitt drove by the lot on his way to work, property was being removed. Langfitt's bus and car were already gone, but the boat was still there. He immediately stopped and inquired. Pulley advised that "the court" permitted him to move the property, and that his lawyer was "doing all of this." When Langfitt returned with the sheriff, the boat was gone. Pulley could not or would not tell either Langfitt or the Sheriff the location of his property. At this time, Pulley claimed that the Bankruptcy Court had moved the items.[1] Since Pulley could not, or would not, tell Langfitt the location of the property, Langfitt drove around the area, and ultimately, conducted an aerial search to finally locate his property. When he located the property, it had been ransacked, looted, and abandoned on the property of another.

In May 1989, Langfitt filed a suit against Pulley and others in the Superior court located in San Bernardino, California for damage to his property. Arbitration was conducted in 1990 at which Pulley appeared, but no resolution was achieved. A hearing was held on February 25, 1992, at which Pulley appeared; the parties were advised by the court that trial was set on that date for September 24, 1992. Accordingly, his protestations to the contrary, Pulley was fully aware that the case was on-going. Trial was held on September 24, 1992, at which Pulley failed to appear. At some point during the litigation, Pulley fled to Arkansas, but apparently did not advise the California court of his whereabouts.

Now residing in Arkansas, Pulley filed this bankruptcy case on May 11, 1993. Despite the fact that he knew a case had been pending against him in California, Pulley made no effort to schedule the claim on his bankruptcy petition. Following Langfitt's attempt to register his California judgment against Pulley in Arkansas, he moved to reopen his case in order to have the debt determined discharged in this case.

## II.

The Bankruptcy Code provides in pertinent part:

A discharge under section 727 ... does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(a) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed in time to permit—

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

\*　　\*　　\*　　\*　　\*　　\*

(6) For willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(3)(B), (6).

## A.

■ The Court finds that Langfitt did not receive notice of the bankruptcy. The statute requires "notice" or actual knowledge. No notice was sent to the defendant such that Langfitt had no notice of the case. Moreover, the record is devoid of any indication that Langfitt had knowledge, or, indeed, any reason to know of the case. Accordingly, Langfitt satisfied that element of the section 523(a)(3) cause of action.

■ That does not end the inquiry under section 523(a)(3), however, inasmuch as

---

1. James McFarland filed a bankruptcy case in January 1989 which was soon dismissed. He filed a second case in March 1989. Hence, as Pulley was fully aware, there was no bankruptcy case pending at the time the property was removed from the lot.

Langfitt must prove a cause of action under section 523(a)(6). While there is a division among the bankruptcy courts as to the burden of proof under this section, *compare In re Crull,* 101 B.R. 60 (Bankr.W.D.Ark.1989), with *Chapins v. Peloso (In re Peloso),* 107 B.R. 31 (Bankr.S.D.N.Y.1989), this Court believes that the better view is to require the creditor to also demonstrate the merits of the paragraph (2), (4), (6) nondischargeability action. *See In re Waugh,* No. 94–Civ–57 (E.D.Ark. Oct. 10, 1995), *appeal filed,* No. 95–3835 (8th Cir. Nov. 7, 1995). Accordingly, in addition to the proof demonstrating that there was no notice or actual knowledge of the bankruptcy case, Langfitt must prove his cause of action under section 523(a)(6). *See In re Lochrie,* 78 B.R. 257, 259 (9th Cir. BAP 1987) (burden of proof "rests solely with the creditor seeking to have its debt declared nondischargeable.").

### B.

■ "Willful" means an intentional act and "malicious" means an act done without just cause or excuse. *Roy v. Gravel,* 143 B.R. 825 (W.D.La.1992), *aff'd,* 983 F.2d 1062 (5th Cir.1993); *Reid v. Reid,* 149 B.R. 669, 672 (Bankr.D.Kan.1992). Generally, malice must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights. *In re Posta,* 866 F.2d 364, 367 (10th Cir.1989).

### III.

■ The Court finds that the debt is the result of wilful and malicious injury. Pulley, when he took possession of the lot, had been advised by McFarland that the particular items belonged to Langfitt. On numerous dates, Langfitt advised Pulley that he owned the property, advised that the registration slips were in the vehicle, and continually asked for the return of the property.

Pulley's story to Langfitt changed with the events and time such that it is clear that debtor deliberately misled Langfitt. His story alternated between, "my lawyer is checking" or "the property is tied up in court." Later, when the property disappeared, his stories expanded to include: "the Court did

it" and "somebody else did it." Pulley lied and delayed until the property was removed and destroyed. Despite Langfitt's repeated requests for the return of his property, Pulley ignored him and in fact was actively seeking permission to remove the property from a court, ultimately causing its removal without advising Langfitt, whom he knew to be the owner. His stories to Langfitt, his delaying tactics, misleading statements, combined with his actions, indicate that he was responsible for the damage to Langfitt's property, and that he acted deliberately and wilfully to cause that damage.

Pulley did not present a demeanor consistent with truthfulness. Indeed, the stories he related to Langfitt as well as to this Court are patently untrue. His testimony was rambling and incoherent, indicating not only his untruthfulness, but his inability to adhere to one particular version of events.

### IV.

■ Pulley asserts that the defendant cannot meet his burden of demonstrating that the debt was due to wilful and malicious injury. In support of this assertion, Pulley showed only that the Superior Court in California did not impose punitive damages. Inasmuch as the state court judgment was entered after Pulley filed this bankruptcy case, it is presumptively "invalid." *See Reichenbach v. Kizer (In re Reichenbach),* 174 B.R. 997 (Bankr.E.D.Ark.1994), *appeal filed,* No. 5–95cv48 (E.D.Ark. filed Dec. 15, 1994). Thus, collateral estoppel would apply. Inasmuch as the judgment in California is presumptively invalid, the ruling by that court is without effect in this proceeding.

■ Secondly, while it is true that an imposition of punitive damages will support a finding that an act was done wilfully and maliciously for dischargeability purposes, *In re Williams (Davis v. Williams),* 173 B.R. 912 (Bankr.W.D.Ark.1994), the converse is not necessarily true. That is, the fact that the trial court made no findings regarding punitive damages is insufficient to demonstrate that the creditor cannot carry his burden of proof. The fact that punitive damages were not imposed does not necessarily ne-

gate a finding of wilful and malicious injury by the state court. *See generally, Johnson v. Miera (In re Miera)*, 926 F.2d 741, 743 (8th Cir.1991).

Based upon these findings of fact, it is

**ORDERED** that the debt owed by the debtor Jimmy Ray Pulley to Jerry Langfitt is nondischargeable in this bankruptcy case. 11 U.S.C. § 523(a)(3), (6).

**IT IS SO ORDERED.**