**In re Thomas SCOTT Jr. and Willie Mae Scott, Debtors.**

**James E. BUCHANAN, Personal Representative of the Estate of Norris Buchanan, Plaintiff,**

v.

**Willie Mae SCOTT, Defendant.**

**Bankruptcy No. 97–33837.
Adversary No. 97–1200.**

United States Bankruptcy Court, S.D. Florida.

Dec. 17, 1998.

C.K. Stuart, Jr., Lakeland, FL, for James E. Buchanan.

T.E. Campbell, Ft. Pierce, FL, for Willie Mae Scott.

## MEMORANDUM OF DECISION HOLDING DEBT NONDISCHARGEABLE

FRANCIS G. CONRAD, Bankruptcy Judge.*

We must determine[1] the dischargeability *vel non* of Plaintiff's State Court judgment against Debtor. A Jury determined that Debtor received a total of $109,580.87 in money and property "as the result of undue influence she exercised over Norris Buchanan" ("Mr.Buchanan"), Plaintiff's deceased father. Plaintiff's Exh. 2. Plaintiff alleges two distinct bases for finding nondischargeability under 11 U.S.C. § 523(a)(6): First, Plaintiff contends that we must give collateral estoppel effect to the State Court judgment, and

---

* Sitting by Special Designation to the Southern District of Florida.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the general reference to this Court from the U.S. District Court for the Southern District of Flori-

da. This is a core matter under 28 U.S.C. § 157(b)(2)(I) and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bankr.P. 7052.

second, that the evidence at trial independently establishes nondischargeability.

Two very efficient lawyers have served this Court and their respective clients well by focusing on essentials, and leaving us with all grain and no chaff. Plaintiff's Complaint alleged the judgment debt was nondischargeable on three theories:

    1. Debtor obtained property and money by false pretenses, misrepresentation, or fraud, § 523(a)(2)(A);

    2. Debtor was guilty of fraud or defalcation in a fiduciary capacity, embezzlement, or larceny, § 523(a)(4); and,

    3. Debtor is guilty of willful and malicious injury to Mr. Buchanan or to his property, § 523(a)(6).

At trial, and in post-trial pleadings, Plaintiff abandoned the first two theories and focused solely on the third. Accordingly, we find for Debtor on the §§ 523(a)(2)(A) and (4) counts on the grounds that Plaintiff has failed to prove his case.

The issue remaining is whether, under the doctrine of collateral estoppel, or based on the evidence adduced at trial, the judgment entered on the State Court jury verdict established Debtor's liability for willful and malicious injury to Mr. Buchanan or his property under § 523(a)(6).[2] The evidence presented by Plaintiff before us includes the State Court's instructions to the jury, the jury's verdict, the judgment, and financial records involving the Debtor and Mr. Buchanan. In addition, Plaintiff examined Debtor briefly. We also have the parties' factual stipulations. Debtor produced no evidence to contravene Plaintiff's case.

We hold that the State Court judgment is nondischargeable on two independent grounds. First, the jury's verdict establishes willful and malicious injury, and collateral estoppel bars re-litigation of the matter in this court. Second, based on the evidence

before us, we find that the elements of § 523(a)(6) are satisfied: Debtor actively procured Mr. Buchanan's wealth when he was old and sick and dependent upon her; her actions were wrongful, excessive, and without just cause.

## FACTUAL BACKGROUND

The relevant facts, gleaned from the Stipulations of the Parties ("Stip"), the Pre–Trial Order ("PTO"), trial exhibits ("Exh."), and Debtor's testimony at trial ("Tr."), are as follows:

    1. Mr. Buchanan died on May 21, 1993. His Death Certificate, Exh. 5, indicates that he was 79.[3]

    2. Prior to his death, Mr. Buchanan "required personal care and assistance due to a debilitating medical condition." Pre–Trial Order, at 1.

    3. Debtor "was retained by Mr. Buchanan to provide personal care and assistance." *Id.* Her duties were to "clean, cook, drive and provide other assistance and services as requested." In addition, she "wrote his checks out" under a power of attorney. Tr., at 8–9.

    4. Debtor was paid $50 a day and "worked anywhere from four to seven days a week." Tr., at 7. The number of hours she worked on a particular day would "just depend on his condition." *Id.*

    5. We are unable to determine from the record how long Debtor worked for Mr. Buchanan. The earliest indication we could find is a Certificate of Deposit in their joint names issued on Aug. 16, 1988. Exh. 5. The power of attorney is dated March 5, 1992. Exh. 8.

    6. In addition to a power of attorney, Debtor was authorized, on March 6, 1992, to access Mr. Buchanan's safe deposit box. Exh. 6. She went into the safe deposit box 13 times between March 6, 1992, and Mr. Buchanan's death on May 21, 1993.

---

**2.** Section 523(a)(6) excepts from the Chapter 7 discharge "any debt … for willful and malicious injury by the debtor to another entity or to the property of another entity."

**3.** There appears to be some confusion about Mr. Buchanan's age. Plaintiff's proposed "Order on Amended Complaint to Determine Dischargeabil-

ity of Debt," at 1, indicates that he was in his 80s when he hired Debtor. Debtor testified that he was "probably about 81, somewhere in there," when she went to work for him. Tr., at 12. We have calculated his age based on the dates of his birth and death as they appear on the Death Certificate.

7. "Prior to his death, Norris Buchanan obtained three certificates of deposit (CD) which he titled 'Norris Buchanan or Mae Scott.'" Stip., at 1 ¶ 4.

(a) A CD in the amount of $67,509.28 was issued on April 8, 1992. The "Customer Name" on the face of the CD is listed as "Norris B. Buchanan or Mae Scott." Exh. 5, at 1. The instructions as to ownership on the reverse side of this CD were not executed in a manner consistent with an intent by Mr. Buchanan that Debtor be a joint tenant on the CD.

(i) The designation of ownership on the reverse side required that Mr. Buchanan check one of four boxes to specify the type of ownership interest he intended to create. The options, were, in order, "individual," "joint tenancy," "trust," and "Corporation." *Id.*, at 3.

(ii) An "X" placed between the "individual" and "joint tenancy" boxes touches each, intruding slightly more into the "individual" box. *Id.*

(iii) The instructions that go with the "joint tenancy" box state: "This Certificate shall be joint property of the undersigned individuals and owned by them as joint tenants with right of survivorship, and not as tenants in common or tenants by the entireties, and upon the death of either, any balance in said account shall become the absolute property of the survivor depositor ." Debtor's signature is absent; only Mr. Buchanan's appears. *Id.*

(b) The reverse side of a CD in the face amount of $32,071.69 was not introduced into evidence. The "Customer Name" on the face of the CD is listed as "Norris B. Buchanan or Mae Scott." *Id.*, at 6.

(c) A CD in the amount of $10,000 was issued on April 8, 1992. The "Customer Name" on the face of the CD is listed as "N.B. Buchanan or Mae Scott." The instructions as to ownership on the reverse side of this CD were not executed in a manner consistent with an intent by Mr. Buchanan that Debtor be a joint tenant on the CD. *Id.*, at 9.

(i) The designation of ownership on the reverse side required that Mr. Buchanan check one of four boxes to specify the type of ownership interest he intended to create. The options, were, in order, "individual," "joint tenancy," "trust," and "Corporation." *Id.*, at 12.

(ii) No box was checked to designate the type of ownership Mr. Buchanan intended to create. *Id.*

(iii) Only Mr. Buchanan's signature appears as the depositor. *Id.*

8. On the day that he died, Debtor closed the safety deposit box and removed the two Certificates of Deposit in the amounts of $32,071.69 and $67,509.28. Stip., at 2.

9. Debtor redeemed the CD for $10,000 on April 9, 1993. Stip., at 1 ¶ 7; Exh. 5, at 6. On May 26, 1993, she redeemed the two CDs she had removed from Mr. Buchanan's safe deposit box. Stip., at 1 ¶ 8; Exh. 5 at 2, 7.

10. In addition, Debtor received from Mr. Buchanan a $4,000 Ford car, a $15,700 Toyota Camry, and a jeep purchased by Mr. Buchanan for an unspecified amount. Stip., at 2 ¶¶ 12–14. Debtor's husband received from Mr. Buchanan a tractor and welding equipment. *Id.*, at 2 ¶ 15.

11. Other value received by Debtor from Mr. Buchanan included insurance on her vehicles, a treadmill, and payment of some of her medical bills. Tr., at 9–10.

12. Plaintiff learned about the transfers to Debtor after his father died, Exh. 10, at 2. Plaintiff sued Debtor to recover his father's property. A State Court jury determined that Debtor had received $109,580.87 [4] in money or property "as the result of undue influence she exercised over Norris Buchanan." Exh. 2 Judgment was entered on the jury's verdict, Exh. 1. Debtor did not appeal, and the State Court judgment is final. Tr., at 14.

### DISCUSSION

In the discussion that follows, we will set out, in turn, the elements of collateral estop-

---

**4.** We note that the Jury's award equals the total amount of the three CDs.

pel, of "willful and malicious injury" under § 523(a)(6), and of "undue influence" as stated by the State Court Trial Judge in his instructions to the jury. We will then compare the elements of "undue influence" with those of "willful and malicious injury" to determine whether the jury's determination that Debtor was guilty of the former establishes the latter under the doctrine of collateral estoppel. Finally, we will consider the extent to which the direct evidence presented to us at trial establishes nondischargeability.

### Elements of Collateral Estoppel

The Eleventh Circuit has stated clearly the doctrine of collateral estoppel as we must apply it to the State Court judgment against Debtor.

Collateral estoppel prevents the re-litigation of issues already litigated and determined by a valid and final judgment in another court. It is well-established that the doctrine of collateral estoppel applies in a discharge exception proceeding in bankruptcy court. See *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *Hoskins v. Yanks (In re Yanks),* 931 F.2d 42, 43 n. 1 (11th Cir.1991). However, collateral estoppel only applies if the following elements are present:

(1) The issue in the prior action and the issue in the bankruptcy court are identical;

(2) The bankruptcy issue was actually litigated in the prior action;

(3) The determination of the issue in the prior action was a critical and necessary part of the judgment in that litigation; and

(4) The burden of persuasion in the discharge proceeding must not be significantly heavier than the burden of persuasion in the initial action. *Bush v. Balfour Beatty*

*Bahamas, Ltd. (In re Bush),* 62 F.3d 1319, 1322 (11th Cir.1995) (citation omitted).

*In re Bilzerian,* 100 F.3d 886, 892 (11th Cir.1996).

### Proving "Willful" and "Malicious"

■■■ The Court of Appeals has also clearly defined "willful" and "malicious." "[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury(4)27' "[5] *In re Walker,* 48 F.3d 1161, 1165 (11th Cir.1995). "Malicious", as used in the discharge statute, means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *In re Latch,* 820 F.2d 1163, 1164 n. 4 (11th Cir.1987).[6]

### Elements of "Undue Influence"

The State Court jury specifically found that Debtor did "receive money or property as the result of undue influence she exercised over Norris Buchanan." Exh. 2. The State Court's instructions to the jury were introduced into evidence in this matter. Exh. 3. The relevant portions of those instructions, as identified by the parties, are as follows:

A gift is invalid if it is the result of undue influence.

Undue influence is conduct which must amount to over persuasion, duress, force or coercion or artful or fraudulent contrivances to such a degree that there is a destruction of free agency or will power of the one making the gift. Mere affection, kindness or attachment may not of itself constitute undue influence.

If there is a confidential relationship between the parties, and the gift was actively procured by the one who received the gift,

---

**5.** The elided portion of the sentence continues, "or which is substantially certain to cause injury." *Walker, supra,* 48 F.3d at 1165. As Bankruptcy Judge Funk has noted, the Supreme Court's decision in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), appears to limit the definition of "willful" to an "intentional and deliberate injury," and to exclude intentional and deliberate *acts,* even those that are substantially certain to cause injury. *In re Tomlinson,* 220 B.R. 134, 137–38 (Bankr. M.D.Fla.1998). *Cf., In re Slosberg,* 225 B.R. 9,

19 (Bankr.D.Me.1998) ("substantially certain" alternative survives Geiger.) We need not address this issue, however, because the act—procuring another's money and property—is the injury.

**6.** The Bankruptcy Court in Slosberg points out that Geiger has reformulated the "willful" element in a way that incorporates much of what had been subsumed under the "malicious" element. Slosberg contends that all that remains of the "malicious" element is "without just cause." *Slosberg, supra,* 225 B.R. at 19–21.

then there is a presumption that the gift was the result of undue influence.

The person in a confidential relationship must then offer a reasonable explanation for his or her active involvement in the other's affairs. If a reasonable explanation is given, then the Plaintiff must show that the gift was procured by undue influence without the benefit of the presumption.

. . . .

A confidential relationship exists whenever one person trusts and relies upon another. The relationship and duties need not be legal but may be moral, social, domestic or merely personal.

. . . .

If the greater weight of the evidence shows that there was a confidential relationship between Norris Buchanan and Mae Scott at the time a gift was given, that Mae Scott actively procured the particular gift, and that Mae Scott did not offer a reasonable explanation for her involvement in Norris Buchanan's affairs at the time the gift was given, then you must find that the gift was invalid. If, however, the greater weight of the evidence shows that there was a reasonable explanation for Mae Scott's involvement in Norris Buchanan's affairs at the time the gift was made, and that Norris Buchanan gave the particular gift under his own free agency or free will, then you must find that the gift was valid.

Exh. 3, at 5–6.

### Application of Collateral Estoppel

■ Although undue influence as explained to the jury by the trial court did not directly use the words "willful" or "malicious", a review of the complete instructions confirms the two concepts were integral to the verdict. The exact language of 11 U.S.C. § 523(a)(6) need not be used in the state proceeding so long as the facts proven fit the critical terms of the Bankruptcy Code. *In re Turner,* 204 B.R. 988 (9th Cir. BAP 1997).

Under the instructions given by the trial court, the jury could not have found undue influence without determining that Debtor had been guilty of "willful and malicious injury" to Mr. Buchanan and his property.

"Willful," as noted above, requires proof of a deliberate act intended to cause injury. "Undue influence" required the jury to find "over persuasion, duress, force or coercion or artful or fraudulent contrivances." Even under the presumption of undue influence for confidential relationships, the jury was first required to find that Debtor "actively procured" Mr. Buchanan's wealth. We can conceive of no scenario under which the jury could find guilt without a determination that Debtor had engaged in deliberate conduct intended to acquire Mr. Buchanan's money.

To be "malicious" the injury must be "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Latch, supra,* 820 F.2d at 1164 n. 4. This element, too, was squarely before the jury. The jury instructions required the jury to focus on the degree of the injury, requiring a determination that the injury was "wrongful" and "excessive." Undue influence was expressly defined as conduct "to such a degree that there is a destruction of free agency or will power of the one making the gift," and was clearly distinguished from "[m]ere affection, kindness or attachment." Exh. 3, at 5.

The alternative presumption of undue influence also required the jury to address the issues of "wrongful," "excessive," and "just cause." The presumption was available only if the jury made three findings: First, the jury had to find that a "confidential relationship" existed between Debtor and Mr. Buchanan in which he trusted and relied upon her. Second, it had to conclude that she "actively procured" what she has acquired. *Id.* Third, the jury had to conclude that Debtor failed to offer a reasonable explanation. The presumption itself disappears in the event that Debtor offers a "reasonable explanation," *id.,* at 5–6, which is tantamount to "just cause." Considered as a whole, the instructions on the presumption of undue influence arising in a confidential relationship required the jury to address both "willful" and "malicious" elements of § 523(a)(6). Accordingly, we hold that the "willful" and "malicious" elements under § 523(a)(6) were identical in legal substance to the issues de-

cided by the jury, and the first element of collateral estoppel is satisfied.

The second element of collateral estoppel, the requirement that the issues be "actually litigated," is satisfied by Debtor's testimony that she was represented by counsel, presented witnesses, and "thought" she had presented the best case she could in State Court. The third element is also satisfied because determination of the "willful" and "malicious" issues were essential to the jury's verdict.

The fourth element of collateral estoppel requires that "[t]he burden of persuasion in the discharge proceeding must not be significantly heavier than the burden of persuasion in the initial action." *Bush, supra,* 62 F.3d at 1322. The parties were in agreement that Plaintiff bears the burden of proving his case by a preponderance of the evidence in this proceeding. The jury was instructed to use the "greater weight of the evidence" standard, which was defined to mean "the more persuasive, convincing force and effect of the entire evidence in the case." Exh. 3 at 10. Thus, the burden of proof was the same in both proceedings. We therefore hold that the "willful" element was conclusively established in the State Court proceeding under the doctrine of collateral estoppel.

The burden of proof element of collateral estoppel seems at first glance more problematic when it comes to "malicious," however, because the presumption shifts to Debtor the burden of proving no "just cause." The reality, though, is that a defendant in this Court also bears that burden. A plaintiff can prove its case with respect to the lack of just cause by introducing no evidence on the subject, leaving a record devoid of any hint of just cause. That, in fact, is what the state of the evidence is before us, because Debtor presented no evidence on the subject. As a matter of substantive reality, the burden of proof in this Court is not substantially heavier than in the State Court, and the fourth element of collateral estoppel is satisfied.

■ Thus, we conclude that under the doctrine of collateral estoppel, the jury's verdict conclusively established the nondischargeability of the State Court judgment. In the event we are wrong, however, we also find the judgment nondischargeable based on the evidence before us. Debtor actively procured the wealth of a sick, old man. Counsel's protestations that she was merely the passive recipient of Mr. Buchanan's largesse are unavailing. The record is clear that she cleaned out his safe deposit box on the day of his death, and promptly cashed in the CDs. Her conduct was "willful" and "malicious" within the meaning of § 523(a)(6). She acquired his wealth intentionally, which makes it "willful." That injury to Mr. Buchanan and his estate was wrongful, clearly excessive, and was without just cause, which makes it "malicious."

## CONCLUSION

We hold that the State Court judgment against Debtor is nondischargeable on two grounds: First, we find that collateral estoppel applies and that the jury's verdict determined the Debtor's liability for willful and malicious injury to Mr. Buchanan and his estate. Second, based on the evidence presented at trial before us, we find that Debtor actively procured the wealth of a sick, elderly man who was dependent on her, and that her conduct was wrongful, excessive, and without just cause.