**In re Matthew Scott GAGLE and Lisa Ann Gagle, aka Lisa Ann Ternay, aka Lisa Kotsiris, Debtors.**

**America First Credit Union, a Corporation, Plaintiff,**

**v.**

**Matthew Scott Gagle and Lisa Ann Gagle, aka Lisa Ternay, aka Lisa Kotsiris, Defendants.**

**Bankruptcy No. 97B–28583. Adversary No. 97PB–2386.**

United States Bankruptcy Court, D. Utah, Northern Division.

Feb. 8, 1999.

Timothy W. Blackburn, Van Cott, Bagley, Cornwall & McCarthy, Ogden, Utah, for plaintiff.

Brent E. Johns, Ogden, Utah, for defendants.

## MEMORANDUM DECISION

JUDITH A. BOULDEN, Bankruptcy Judge.

A $30,000 customized truck was intentionally destroyed by the debtor when, in need of cash, he sold off the truck's parts until nothing of the truck remained. Yet the debtor always intended to, and in fact did, make loan payments to the creditor that had a perfected security interest in the truck, despite the fact the truck had been destroyed. Under these circumstances, did the debtor wilfully and maliciously injure the creditor or its property so that the amount owed to the creditor is nondischargeable under 11 U.S.C. § 523(a)(6)? The answer is yes. The analysis used to reach this conclusion, but also to conclude that the debtor did not defraud the creditor so as to render the debt nondischargeable under 11 U.S.C. § 523(a)(2)(A), follows.

## FACTS

In May of 1996, Matthew Scott Gagle (Matthew Gagle) and Lisa Ann Gagle (Lisa Gagle), the debtors in this case (collectively the Debtors), applied for a $10,000 unsecured debt consolidation loan from America First Credit Union (America First). America First disapproved the loan application, but advised the Debtors that the loan would be granted if, among other things, the loan was collateralized. The only property the Debtors could provide as collateral was a customized 1969 Chevrolet shortbed sidestep pickup truck (Truck) they owned free and clear. The Debtors purchased the Truck in 1991 for approximately $1,500. Matthew Gagle, who is a mechanic by trade, spent approximately $17,000 for parts and contract labor to cus-

tomize the Truck during the following five years. He believed the Truck was worth more than $10,000, and the Debtors listed the Truck on the loan application as having an appraised value of $25,000.

The Debtors agreed to pledge the Truck as collateral. America First conditionally agreed to extend the loan, but required that the Debtors first have the Truck appraised. Matthew Gagle then arranged to have Benn Framer (Framer), who specialized in valuing custom vehicles, appraise the Truck. Lisa Gagle took various photographs of the Truck to Framer's office to obtain the appraisal. Although there is contradictory testimony, the Court finds that Framer reviewed the photographs and authorized an appraisal that valued the Truck at $30,000. The valuation of the Truck contained in the Framer appraisal was generally accurate at the time it was made.

The Debtors gave the $30,000 Framer appraisal to America First. In so doing, the Debtors did not believe the Framer appraisal was false or inflated, and did not intend to obtain the Loan proceeds through fraud, false pretenses or false representation. America First relied upon the Framer appraisal in making the $10,000 collateralized loan (Loan) to the Debtors. America First's reliance on the Framer appraisal was justified in light of the specialized nature of the Truck, and the Framer appraisal was material to the Loan transaction.

The Loan was funded on approximately June 1, 1996, and America First properly perfected a security interest in the Truck. The Debtors made sporadic payments on the Loan that totaled approximately $2,926, or the equivalent of almost eleven $270 payments during the fifteen months between when the first payment was due and when the Debtors filed this Chapter 7 case. The last payment of $540 was made to America First on June 16, 1997. It is unclear from the evidence during what period of time the Loan may have been in default. The remaining balance on the Loan is $10,143.61. America First has incurred attorney fees of $1,790.50, $1,560 of which are reasonable, and costs of $329.50 in relation to this adversary proceeding. It is this amount representing the contract balance, plus attorney fees and court costs (Debt), that America First seeks to have declared nondischargeable.

The Co–Maker and Security Agreement that was read, signed and understood by the Debtors provided as follows:

OWNERSHIP OF COLLATERAL: ... You agree not to sell ... the collateral ... until the advance has been paid.

USE OF COLLATERAL: While any part of this advance is unpaid, you promise: ... (2) To obtain written permission from the credit union before making major alterations....

DEFAULT: ... You will be in default if you break any promise you made under this Security Agreement.

COLLECTION COSTS: ... If the Credit Union takes legal action against you ... you agree to pay reasonable attorney fees and court costs.

Despite receiving the Loan proceeds, the Debtors' financial condition worsened and they fell further behind in meeting their financial obligations. Matthew Gagle's income from his commission-only occupation declined and, even though he took a second job and asked relatives for money, the Debtors needed additional funds to cover their family's living expenses.

To cover the shortfall, in September of 1996, Matthew Gagle began to remove and sell parts from the Truck in exchange for cash. In the beginning he sold only a few parts with the intent that when his financial condition improved, he would replace the parts. However, by January of 1997, all the parts from the Truck had been sold and nothing of the Truck remained to which America First's security interest could attach. The Debtors did not try to sell the entire Truck in September of 1996 while it was in show condition because they did not have the time or resources to do so. Lisa Gagle knew Matthew Gagle was selling the Truck's parts but did not participate in parting-out the Truck. The sale of the parts from the Truck was of no consequence to Lisa Gagle because the Debtors intended to continue making payments on the Loan, and in fact did so, well after all of the Truck's parts had been sold.

The sale of the Truck's parts generated approximately $9,600. The funds were placed in a checking account used by the Debtors to pay household bills, including but not limited to those owed to America First.

The Debtors filed a Chapter 7 petition on September 24, 1997. America First timely filed this adversary proceeding, in which it seeks judgment that the Debt is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6).[1] The matter was tried to the Court and taken under advisement to review the impact of three Supreme Court rulings upon the applicable law of the Tenth Circuit as applied to the facts of this case.

## DISCUSSION

### A. Jurisdiction

The Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§ 1334, 157(a) and DUCivR 83–7.1. Venue is proper in this jurisdiction under 28 U.S.C. §§ 1408(1) and 1409(a). This proceeding to determine the dischargeability of a debt is a core proceeding pursuant to 28 U.S.C. § 157(b)(1)(I), and this Court has jurisdiction to enter a final order.

### B. Section 523(a)(2)(A)

■ America First's complaint pleads a claim for relief under 11 U.S.C. § 523(a)(2)(A).[2] In order to prevail in its claim, America First must prove, by a preponderance of the evidence, that the Debtors obtained the Loan by false pretenses, a false representation, or actual fraud, other than a statement respecting the Debtors' financial condition. § 523(a)(2)(A); *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). As clarified in *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), we look to the elements set forth in the RESTATEMENT (SECOND) OF TORTS (1976)

(Restatement (1976)) to determine what constitutes actual fraud for the purposes of § 523(a)(2)(A). *Id.* at 69–70, 116 S.Ct. 437 (specifically referencing §§ 537, 540 and 541 of the Restatement (1976)); *see also, Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 783–84 & n. 5 (10th Cir. BAP 1998). The Restatement (1976) sets forth the elements of actual fraud under § 525, Liability for Fraudulent Misrepresentation, as follows:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

Restatement (1976) at § 525.

■ America First has failed to prove, even by a preponderance of the evidence, that it suffered a loss as a result of the Debtors' misrepresentation of fact or opinion made for the purpose of inducing America First to act thereon. The evidence fully supports the $30,000 valuation the Framer appraisal placed upon the Truck. No fraudulent misrepresentation of any kind was made by the Debtors, whether by false pretenses, false representation or actual fraud.[3] America First has failed to prove that either of the Debtors intended to deceive America First.

### C. Section 523(a)(6)

■ America First's remaining claim for relief is plead pursuant to § 523(a)(6). Section 523(a)(6) provides that a debtor may not discharge any debt that is "for willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6). Federal Rule of Bankruptcy Procedure 4005 places the burden of proof upon America First to prove that the obligation owed to it by the Debtors is nondis-

---

1. America First plead for relief under 11 U.S.C. §§ 523(a)(7) or 523(a)(A) [sic] in its Amended Complaint. The parties agree that the applicable sections of Title 11 are §§ 523(a)(6) and 523(a)(2)(A).

2. Future references are to Title 11 unless otherwise noted.

3. Since no false representation was made, we need not deal with the absence of concepts similar to false pretenses and false representation in the Restatement (1976). *See La Capitol Fed. C.U. v. Melancon (In re Melancon)*, 223 B.R. 300 (Bankr.M.D.La.1998).

chargeable; and, America First must prove its claim by a preponderance of the evidence. *Grogan*, 498 U.S. at 291, 111 S.Ct. 654; *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1526 (10th Cir.1993).

## 1. Willful and Malicious Injury

 Because they are distinct elements, America First must establish that the Debtors' conduct was both willful and malicious.[4] The meaning of the term "willful" has recently been analyzed by the Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). *Geiger* addressed the dischargeability of a debt based on a medical malpractice judgment arising from the doctor/debtor's negligent or reckless conduct. The issue was whether § 523(a)(6) includes acts done intentionally which cause injury, or only acts done with the actual intent to cause injury. *Id.* at 977. The Supreme Court stated, "[T]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* This definition represents a very narrow reading of "willful" requiring a deliberate injury akin to that needed to establish an intentional tort. *Id.*

Although *Geiger* defined "willful," it did not define "malicious." Reference is therefore made to Tenth Circuit law to define "malicious." This requires a brief analysis of three pivotal Tenth Circuit cases interpreting § 523(a)(6) of the Bankruptcy Code, and the impact of *Geiger* upon the interpretation of, and the interplay between, "willful" and "malicious" in those cases.[5]

In *Farmers Ins. Group v. Compos (In re Compos)*, 768 F.2d 1155 (10th Cir.1985), a driver/debtor ran into the plaintiff's car while driving under the influence of alcohol. *Compos* anticipated the ruling in *Geiger*, holding that: " 'Willful' modifies 'injury.' Section 523(a)(6) does not except from discharge intentional acts which cause injury; it requires instead an intentional or deliberate injury." *Id.* at 1158. Since there was no intentional or deliberate injury in *Compos*, the willfulness requirement of § 523(a)(6) was not met and the debt was discharged.

Four years later the Tenth Circuit addressed the meaning of both willful and malicious in *C.I.T. Financial Services, Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989). *Posta* held that a debt arising from an unsophisticated debtor's technical conversion of a trailer by selling it without the secured creditor's knowledge was dischargeable. *Posta* indicated that willful conduct was simply conduct that was volitional and deliberate, and did not require a finding

---

4. *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir.1993) (determining whether "the requisite 'malice' in addition to 'willfulness' is present"); *C.I.T. Financial Services, Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989) (declining to define "malicious" as synonymous with "willful"); *McAlister v. Slosberg (In re Slosberg)*, 225 B.R. 9, 16 (Bankr.D.Me.1998) (willful and malicious are distinct elements). *But see Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998) (deciding that aggregating willful and malicious into a unitary concept is sensible).

5. In resolving the alleged conflict between the Eighth and Tenth Circuits, *Geiger* implicitly overruled the meaning of "willful" as used in the Bankruptcy Act case of *First Nat'l Bank of Albuquerque v. Franklin (In re Franklin)*, 726 F.2d 606 (10th Cir.1984), a medical malpractice action in which a patient suffered cardiac arrest during surgery performed by the debtor/doctor. *Franklin* held that the debtor's grossly negligent actions amounted to willful and malicious injury. In so holding the Tenth Circuit stated, "there is

little doubt that [debtor] intended the acts that he did perform, which acts performed in the manner and under the conditions present in this particular situation necessarily resulted in injury. That is sufficient to support a finding of willful and malicious conduct." *Id.* at 610.

*Franklin* was consistent with the Supreme Court's interpretation of Section 17(a)(8) of the Bankruptcy Act in *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) which held that willful and malicious conduct included acts that met a "reckless disregard" standard. *Id.* at 487, 24 S.Ct. 505. The adoption of the Bankruptcy Code arguably overruled *Tinker.* In any event, the definition of "willful" in *Franklin* was modified by the Bankruptcy Code case of *Farmers Ins. Group v. Compos (In re Compos)*, 768 F.2d 1155 (10th Cir.1985). *See also, MCorp Management Solutions, Inc. v. Thurman (In re Thurman)*, 901 F.2d 839, 841 (10th Cir.1990) (noting, that despite the "confusing references" and "misleading language" citing both the Act and § 523, *Franklin* is restricted to § 17 of the Act and was not binding on the court in *Compos*, and its interpretation of § 523(a)(6)).

of negligence or recklessness. *Id.* at 367. Instead of following *Compos's* interpretation that "willful" required an intentional injury, *Posta* found that willful conduct required only an intentional act. *Posta* then shifted the "intent to injure" element to the definition of "malicious" indicating that, "the focus of the 'malicious' inquiry is on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor." *Id.* at 367.[6] Thus, the standard for "willful" became whether a debtor's conduct was deliberate rather than the *Compos* (and now *Geiger*) standard that willfulness required an actual intent to injure. The standard for malicious was based on the reasonable foreseeability of injury.[7] *Posta* conflicts with *Geiger*, because *Posta* describes malice as including a specific intent to harm a creditor (*Id.* at 367), which is the same as *Geiger's* definition of willful.

Finally, four years later in *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir.1993), the Tenth Circuit sought to clarify its prior rulings. *Pasek* held a debt arising from an accountant/debtor's intentional breach of a covenant not to compete with his former accounting firm was dischargeable.[8] In so holding, *Pasek* continued to recognize that "willful" and

"malicious" are separate elements, but blended their definitions in a manner that prevents isolation of the meaning of either term. *Pasek* stated, "[w]e believe the rule fully supported by our cases is that 'willful and malicious injury' occurs when the debtor, without justification or excuse, and with full knowledge of the specific consequences of his conduct, acts notwithstanding, knowing full well that his conduct will cause particularized injury." *Id.* at 1527.

*Pasek* is significant because it requires, for the first time, that an injurious act be done "without justification or excuse" in order to be nondischargeable.[9] It was this phrase that provided the basis for discharging the debt at issue in *Pasek*, and that now provides a definition of malicious that can be applied to the within case.

With *Geiger* clarifying the definition of willful, it is evident that "without justification or excuse," the only remaining language in *Pasek's* definition of willful and malicious, relates to malice. This interpretation of malicious is entirely consistent with the emphasis in both *Field*, 516 U.S. at 70–71, 116 S.Ct. 437, and *Geiger*, 118 S.Ct. at 977, that we look to the common law of torts as distilled in the Restatement (Second) of Torts to inter-

---

6. *See also Coats State Bank v. Grey (In re Grey)*, 902 F.2d 1479, 1481 (10th Cir.1990) ("maliciousness is established if the debtor possesses actual knowledge, or it is reasonably foreseeable, that his conduct will result in injury to the creditor").

7. *Posta* also held that a debtor's malicious intent could be shown by evidence that the debtor's actions were taken with "the specific intent to harm the creditor," or "by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights." *Id.*

8. The debtor's firm had materially altered its agreement with the debtor, had imposed an unreasonable billable hours requirement, attempted to regulate the debtor's personal affairs, and the debtor had reasonably relied on a legal opinion that the covenant not to compete was unenforceable.

9. This language echoes the definition of malice in the part of *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) that *Geiger* left undisturbed. *Tinker* defined legal malice as "a wrongful act, done intentionally, without just cause or excuse." *Id.*, at 486, 24 S.Ct. 505.

Most post-*Geiger* cases have adopted some variation of this definition of malicious. *See Johnson v. Evans (In re Evans)*, 1998 WL 404178, *5 (Bankr.N.D.Ohio 1998); *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)*, 224 B.R. 659, 663 (Bankr.N.D.Ill.1998); *Slosberg*, 225 B.R. at 21; *Mega Enterprises, Inc. v. Lahiri (In re Lahiri)*, 225 B.R. 582, 587 (Bankr.E.D.Pa.1998); *Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45, 51 (Bankr.S.D.N.Y.1998); *Grange Mutual Casualty Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 909–10 (Bankr.N.D.Ohio 1998); *Buchanan v. Scott (In re Scott)*, 227 B.R. 918, 922 (Bankr.S.D.Fla.1998). *But see, Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598 (5th Cir.1998) (just cause or excuse approach is inappropriate); *Branam v. Crowder (In re Branam)*, 226 B.R. 45, 52 (9th Cir. BAP 1998) (after *Geiger*, malice for the purpose of § 523(a)(6) requires an act done with actual intent to cause injury); *Molina v. Seror (In re Molina)*, 228 B.R. 248, 251–52 (9th Cir. BAP 1998) (declining to decide whether an act done without just cause or excuse is required after *Geiger*). *See also Ehrman v. Feist (In re Feist)*, 225 B.R. 450, (Bankr.D.N.D. 1998) (malicious requires that the debtor intended or fully expected to harm the creditors economic interests).

pret § 523(a)(6), because justification and excuse constitute a defense applicable to all torts. RESTATEMENT (SECOND) OF TORTS (1977) (Restatement (1977)) §§ 887–95.

■ Thus, the definition of willful and malicious in the Tenth Circuit is now clear. In order for an act to be willful and malicious it must be a deliberate or intentional injury (willful) that is performed without justification or excuse (malicious).

## 2. Applying Section 523(a)(6) to the Pending Case

With the current definition of willful and malicious firmly in mind, these terms can now be applied to the facts of this case. In so doing, it should be noted that *Geiger* indicates that a knowing breach of contract alone is not enough to render a debt nondischargeable. The Court in *Geiger* stated, "[a] construction so broad would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'" *Geiger*, 118 S.Ct. at 977.

### a. *Conversion*

■ Since the Supreme Court's ruling in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), it has been clear that if a debtor commits the tort of conversion, it may, under certain circumstances, constitute a willful and malicious injury.[10] *Posta*, 866 F.2d at 367 (willful and malicious injury includes the conversion of property subject to a creditor's security interest). Conversion of property consists of "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." RESTATEMENT (SECOND) OF TORTS (1965) § 222A; *Bank of Utah v. Auto Outlet, Inc. (In re Auto Outlet, Inc.)*, 71 B.R. 674, 676 (Bankr. D.Utah 1987) ("Conversion is generally de-

fined as a wrongfully assumed 'dominion over personal property by one person to the exclusion of possession by the owner and in repudiation of the owner's rights.'" (citations omitted)). "But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice." *Davis*, 293 U.S. at 330, 55 S.Ct. 151.

■ The Debtors had the right to control the Truck until such time as they defaulted on the Loan. Upon default, America First was entitled to exercise its rights under the Co–Maker and Security Agreement and obtain possession of the Truck. U.C.C. § 9–503. There is no evidence that establishes if the Loan payments were delinquent between September 1996 and January 1997 sufficient to place the Loan in default. However, the Co–Maker and Security Agreement provided that the Debtors promised they would not sell the Truck, that they would obtain written permission from America First before making major alterations to the Truck, and that if they broke either of these promises they would be in default. Since Matthew Gagle's sale or alteration of the Truck constituted a default under the Co–Maker and Security Agreement, America First was entitled to control the Truck in accord with its perfected security interest. Matthew Gagle's sale of all the parts of the Truck interfered with America First's right to control its security interest in the Truck because after the destruction of the Truck, the security interest no longer existed. Therefore, Matthew Gagle's actions constituted conversion as described in the Restatement (1965).

### b. *Intent to Injure America First or America First's Property*

Section 523(a)(6) provides that the injury that results in a nondischargeable debt may

10. Section 17(2) of the Bankruptcy Act of 1898 (11 U.S.C. § 35(2)), excepted from discharge debts "for willful and malicious injuries to persons or property of another." Section 17(2) was amended in 1970 to include § 17(a)(2), (11 U.S.C. § 35(a)(2)), that provided that a debt was deemed nondischargeable if it was "for willful and malicious conversion of the property of another." *With v. Amador (In re Amador)*, 596 F.2d 428, 429–30 n. 1 (10th Cir.1979). Section 523(a)(6) recombined into one provision willful and malicious injury and willful and malicious conversion.

be "to another entity or to the property of another entity." § 523(a)(6). Both options must be considered, although some courts appear to apply a willful and malicious injury analysis to only one option or the other. *See e.g., Avco Financial Services of Billings v. Kidd (In re Kidd)*, 219 B.R. 278, 286 (Bankr. D.Mont.1998) (in case of conversion of secured collateral, court analyzed only injury to secured creditor, not injury to property). *But see Grange Mut. Casualty Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 908–09 (Bankr.N.D.Ohio 1998) (considering the intended injury to the creditor and/or her vehicle). While analyzing only one option may be appropriate in certain factual circumstances, such as in *Geiger* where no property was involved, the analysis is usually incomplete in the context of conversion unless both options are considered.

Applying § 523(a)(6)'s first option in this case, the Court concludes the Debtors did not intend to injure America First. The Debtors were aware that the Co–Maker and Security Agreement prevented them from selling or making major alterations to the Truck without America First's permission. They were, however, also faced with an economic crisis. Matthew Gagle then turned to the one asset he owned that he knew could generate immediate cash. He began selling parts from the Truck. His intent, initially, was to replace the parts when his financial situation improved. Despite this intent, he eventually sold the entire Truck in parts, and used the money for necessities and to make payments on several debts, including the Loan. The Debtors intended to and did continue making payments on the Loan well after the Truck was parted out and sold.

This Court therefore concludes that the Debtors' did not deliberately or intentionally injure America First. Put differently, the Debtors did not intend to injure America First's total net worth which would have occurred had the Debtors not intended to repay the Loan. Although the Debtors may have intended to breach the contract with America First, they did not intend to cause injury to America First by selling the Truck, because ultimately no injury would occur if the Loan were repaid. *Salem Bend Condominium Association v. Bullock–Williams (In re Bullock–Williams)*, 220 B.R. 345, 347 (6th Cir. BAP 1998) (debtor breached contract to pay homeowner association dues during successive bankruptcy filings but did not intend to injure the creditor because she thought either the Chapter 13 trustee or her family were paying the dues); *Branch Banking & Trust Co. v. Powers (In re Powers)*, 227 B.R. 73, 76–77 (Bankr.E.D.Va.1998) (no intent to injure creditor because intent to pay off loan over time would have the effect of restoring transferred collateral to creditor); *Lexington Health Care Center of Chicago Ridge, Inc., v. Kraye (In re Kraye)*, 1998 WL 775654, *5 (Bankr.N.D.Ill.1998) (for creditor to recover, it would have to show that the debtor failed to pay the creditor's bill for the purpose of causing injury to the creditor).

The second prong of the § 523(a)(6) inquiry relates to injury by a debtor "to the property of another entity." Matthew Gagle intentionally injured America First's property, its security interest in the Truck, by destroying the Truck such that America First's security interest could no longer attach to its collateral. Matthew Gagle knew the Truck was pledged to America First, and he knew the destruction of the Truck would destroy America First's security interest. No evidence of an intent to injure is more definitive than deliberate destruction of the property fight. *McIntyre v. Kavanaugh*, 242 U.S. 138, 141, 37 S.Ct. 38, 61 L.Ed. 205 (1916) (debt was nondischargeable where a broker deprived a customer of his property forever by deliberately disposing of it without semblance of authority). Matthew Gagle's intentional injury of America First's security interest by destroying the Truck to which it attached is sufficient to sustain the "willful" prong of the "willful and malicious" test.[11] America First has proved, by a pre-

---

11. It is unnecessary, under the facts of this case, to determine whether merely selling the Truck as a whole so that America First's security interest would remain intact and follow the Truck would have constituted the specific intent to injure required by *Geiger*. *Deere & Co. v. Persinger (In re Persinger)*, 1998 WL 542326, *2 (Bankr.N.D.Ohio 1998) (debt dischargeable where debtor sold col-

ponderance of the evidence, the first prong of § 523(a)(6): that Matthew Gagle's conduct in converting America First's security interest in the Truck was willful.

■ This is not the case as it relates to Lisa Gagle. She did not sell the Truck's parts and did not destroy America First's collateral. Her mere acquiescence in Matthew Gagle's conduct or use of the funds generated, is insufficient to provide the specific intent to injure required by *Geiger.* America First has failed to prove that Lisa Gagle specifically intended to harm America First's security interest in the Truck.

### c. *Justification or Excuse*

■ The Court concludes that Matthew Gagle's willful injury to America First's security interest in the Truck was malicious, in that it was accomplished without justification or excuse, although without ill will or spite. *See McAlister v. Slosberg (In re Slosberg),* 225 B.R. 9, 21 (Bankr.D.Me.1998) (malice does not require a showing of spite, ill will, or vengeance but instead that the injurious conduct was undertaken without just cause or excuse); *Deere & Co. v. Persinger (In re Persinger),* 1998 WL 542326, *2 (Bankr. N.D.Ohio 1998) ("A malicious act is one done without just cause or rational justification, and need not contain elements of ill will or intent to harm the victim.").

Some of the circumstances that constitute justification or excuse are found in the Restatement (1977) §§ 887–95, and constitute defenses applicable to all tort claims. *See also Chapman,* 228 B.R. at 909–10 (any violation of the law is presumed malicious for purpose of § 523(a)(6)). In certain circumstances, facts that would constitute consent have been found by courts to justify finding a debt dischargeable.

Consent, as a defense to a tort, is described in the Restatement (1977) as:

(1) Consent is willingness in fact for conduct to occur. It may be manifested by action or inaction and need not be communicated to the actor.

(2) If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact.

Restatement (1977) § 892. Various cases have found debts dischargeable as a result of the actions of the creditor or of a course of dealing amounting to consent.[12] In this case, there is no evidence to support a finding that America First consented, either by its actions or by inaction, to Matthew Gagle's destruction of its security interest in the Truck. America First has carried its burden of proof that Matthew Gagle's conduct was without justification or excuse, and therefore the Court concludes Matthew Gagle's conduct was malicious as used in § 523(a)(6).

lateral subject to a security interest, told each buyer of the security interest and believed that each buyer would pay off the security interest).

12. *See e.g., Bank of Meeker v. McGinnis (In re McGinnis),* 586 F.2d 162, 165 (10th Cir.1978) ("Bank's knowledgeable acquiescence in the trading as giving rise to a course of conduct which could have led McGinnis to believe he was justified in selling the collateral to fund his business operations"); *State of Texas v. Walker,* 142 F.3d 813, 824 (5th Cir.1998) (implying that general belief among colleagues that consulting fees need not be turned over to university may preclude a finding debt was nondischargeable) *cert. denied,* —— U.S. ——, 119 S.Ct. 865, 142 L.Ed.2d 768 *cert. denied,* —— U.S. ——, 119 S.Ct. 865, 142 L.Ed.2d 768; *Florida Outdoor Equip., Inc. v. Tomlinson (In re Tomlinson),* 220 B.R. 134, 138 (Bankr.M.D.Fla.1998) (debt discharged where plaintiff apparently acquiesced in debtor's failure to remit proceeds of the sale of secured collater-

al); *East Idaho Fed. C.U. v. Thomason (In re Thomason),* 225 B.R. 751, 753 (Bankr.D.Idaho 1998) (sale of pickup truck subject to creditor's security interest dischargeable where creditor mistakenly "signed off" lien on the title and debtor assumed creditor had changed status of loan from secured to unsecured); *Bank of Utah v. Auto Outlet, Inc. (In re Auto Outlet, Inc.),* 71 B.R. 674, 679 (Bankr.D.Utah 1987) (the practice between parties of allowing the debtor to sell inventory, co-mingle the funds, and not account for the proceeds until some future time, did not constitute malicious conduct). *See also, Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 331–32, 55 S.Ct. 151, 79 L.Ed. 393 (1934) ("honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed" not considered willful and malicious because conversion was technical or innocent). *But see Miller,* 156 F.3d at 606 (concluding that where an injury is intentional, is can not be justified or excused).

d. *The Debt Incurred as a Result Of Willful and Malicious Injury to America First's Security Interest*

■ The debt owed to America First under § 523(a)(6) does not arise through a claim for recovery on a contract, for mere breach of contract will not support an action under § 523(a)(6). *Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45, 52 (Bankr.S.D.N.Y.1998) (section § 523(a)(6) does not encompass a breach of contract claim unless the same act constitutes an intentional tort such as conversion). Therefore, to determine the claim [13] of America First owed by Matthew Gagle, it is inappropriate to simply adopt the Debt, consisting of the balance due on the Loan, and fees and costs. Instead, the claim is based upon Matthew Gagle's willful and malicious injury to America First's security interest in the Truck. The underlying basis for the injury is conversion which, by definition, is conduct that so seriously interferes with the rights of another to control property that the actor may justly be required to pay the other the full value of the property. Restatement (1965) § 222A. Therefore, "the measure of damages for conversion is the value of the converted property at the time of conversion, not the balance owing under the sales contract." *Snap-on Tools Corp. v. Couch, (In re Couch)*, 154 B.R. 511, 513 (Bankr.S.D.Ind. 1992) (citations omitted); *Sears, Roebuck and Co. v. Taylor (In re Taylor)*, 211 B.R. 1006, 1015 (Bankr.M.D.Fla.1997); *First State Bank of Alsip v. Iaquinta (In re Iaquinta)*, 98 B.R. 919, 925 (Bankr.N.D.Ill.1989); *Shaver Motors Inc. v. Mills (In re Mills)*, 111 B.R. 186, 207 (Bankr.N.D.Ind.1988).

■ In this case, the value of the Truck was $30,000, but the value of America First's property (its security interest in the Truck) was the balance due on the Loan, or $10,-143.61. Where the balance due on the Loan is less than the value of the converted collateral, America First's damages are limited to the lesser of the value of the converted property or the amount of the indebtedness. *Id.* at 207. This is so, not because the debt is based upon the Loan contract, but because the value of the Truck at the time of conversion exceeded the amount due on the Loan. America First may recover as compensatory damages only the amount representing the harm that it sustained. Restatement (1977) § 903.

e. *Attorney Fees*

■ America First also seeks attorney fees and costs based upon the contractual provision contained in the Co–Maker and Security Agreement. Both the American Rule and the Restatement (1977) § 914, provide that damages in a tort action do not ordinarily include attorney fees. The American Rule applies in bankruptcy cases and therefore attorney fees are not allowable unless there is some statutory basis for their award or an enforceable contract providing for such fees. *In re Nichols*, 221 B.R. 275, 278 (Bankr.N.D.Okla.1998).

Recently, the Supreme Court explored the extent of the debt encompassed by a nondischargeability judgment based upon a state statute in *Cohen v. De La Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (any debt, including punitive damages and attorney fees, based upon a statute that arises from fraudulently obtaining money or property may not be discharged). However, *Cohen* does not abrogate the American Rule. *Clark & Gregory, Inc. v. Hanson (In re Hanson)*, 225 B.R. 366, 376–77 (Bankr. W.D.Mich.1998) (noting in a § 523(a)(6) proceeding for conversion in which debt was found nondischargeable that *Cohen* allows no attorney fees absent a statute or contract providing for them); *Wegmans Food Markets, Inc. v. Lutgen (In re Lutgen)*, 225 B.R. 37, 40–41 (Bankr.W.D.N.Y.1998) (to extrapolate from *Cohen* a rule that a creditor is always entitled to attorneys' fees incurred where creditor succeeds in establishing a nondischargeable debt would be to incorrectly hold that the American Rule never applies when a creditor prevails in a § 523(a)(2) fraud claim); *Kress v. Kusmierek (In re Kusmierek)*, 224 B.R. 651, 658 (Bankr.

---

**13.** Section 101(12) defines "debt" as liability on a claim, and § 101(5)(A) defines "claim" as a right to payment.

N.D.Ill.1998) (*Cohen,* which awarded attorneys' fee under New Jersey Consumer Fraud Act, was not support for allowance of fees incurred in bankruptcy court based upon § 523(a)(4)). Therefore, the American Rule requiring either a statutory or contractual basis for an award of attorney fees still controls allowance of attorney fees in this proceeding.

 There is no statutory basis for an award of attorney fees. Nothing in § 523(a)(6) indicates that Congress intended the prevailing party to be awarded fees. Further, Congress expressly allowed the debtor to recover fees under certain circumstances, inapplicable here, as detailed in § 523(d). Had Congress intended to allow creditors attorney fees in § 523(a)(6) actions it would have so indicated. *Iaquinta,* 98 B.R. at 926–67 (remedy created by § 523(a)(6) conversion action does not give creditor a statutory right to attorney fees).

There is no contract that controls the allowance of attorney fees claims in this proceeding. While there is an underlying contract between the parties, this is not a proceeding based upon the Co–Maker and Security Agreement. As previously stated, a breach of contract is insufficient to bar discharge of the debt under § 523(a)(6). Rather, this is a proceeding based upon willful and malicious injury to America First sounding in tort. Therefore, any attorney fee provision in the Co–Maker and Security Agreement is not controlling. *Lutgen,* 225 B.R. at 40–41 (in an action for tortious conduct, no contractual provision warrants departure from the American Rule); *Iaquinta,* 98 B.R. at 927 (§ 523(a)(6) action sounded in tort rather than arising solely from creditors underlying contract, thus attorney fee provisions in security agreements were not controlling); *Mills,* 111 B.R. at 207 (damages in action for conversion of creditor's collateral do not include attorney's fees contemplated by the agreement).

## CONCLUSION

America First has failed to establish, by a preponderance of the evidence, the necessary elements to render any obligation owed to it

by the Debtors nondischargeable under § 523(a)(2)(A), and the claim based thereon is dismissed. The claim against Lisa Gagle plead under § 523(a)(6) is likewise dismissed for failure to establish by a preponderance of the evidence that she wilfully and maliciously injured America First or its property.

America First has established, by a preponderance of the evidence, that Matthew Gagle willfully and maliciously converted America First's property consisting of its security interest in the Truck, and therefore the debt Matthew Gagle owes resulting from that injury is nondischargeable pursuant to § 523(a)(6). Judgment shall be entered against Matthew Gagle concurrently herewith in the amount of $10,143.61.