**In re Harold Harris HOLLOWELL, III, Debtor.**

**Britt's Home Furnishing, Inc., Plaintiff,**

v.

**Harold Harris Hollowell, III d/b/a O.P.M. Construction, Defendant.**

**Bankruptcy No. 96–78846.
Adversary No. 97–6260.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Oct. 6, 1999.

Richard C. Freeman, III, Atlanta, GA, for plaintiff.

Donna J. Patton, Snellville, GA, for defendant.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

Before the court is Plaintiff's motion for reconsideration of the order entered April 15, 1999 (the "Order"), which denied Plaintiff's motion for summary judgment on its claims under § 523(a)(6) and § 727(a)(2), (3) and (4). Defendant filed no response to the motion for reconsideration. Plaintiff's motion for reconsideration presents no new facts and seeks reconsideration only of the denial of summary judgment on the § 523(a)(6) claim. The facts relevant to that claim were fully set forth in the Order and are incorporated herein by reference.

■■■ No provision in the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") specifically provides for reconsideration of orders entered by the court.[1] Motions seeking reconsideration of an order or judgment may, however, be filed pursuant to Bankruptcy Rule 9023, which incorporates FRCP 59(e) [motion to alter or amend judgment], Bankruptcy Rule 9024, which incorporates FRCP 60(b) [motion for relief from judgment or order], and Bankruptcy Rule 7052, which incorporates FRCP 52(b) [motion to amend findings].[2] Motions for reconsideration should

---

1. Motions for reconsideration are addressed, however, in BLR 9023–1, which provides:

   Motions for reconsideration shall not be filed as a matter of routine practice. Whenever a party or attorney for a party believes it is absolutely necessary to file a motion to reconsider an order or judgment, the motion shall be filed with the Clerk of Court within 10 days after entry of the order or judgment. Responses shall be filed not later than ten days after service of the motion. Parties and attorneys for the parties shall not file motions to reconsider the Court's denial of a prior motion for reconsideration.

2. Both Bankruptcy Rules 9023 and 7052, as well as BLR 9023–1, require the filing of a motion within ten days after entry of the order or judgment which is the subject of the motion. Because the time limit in these rules is computed from the date of entry of the order, rather than from the date of service, the three-day mail extension in Bankruptcy Rule 9006(f) is inapplicable. Therefore,

not be used to relitigate issues already decided or as a substitute for appeal. *In re Oak Brook Apartments of Henrico County, Ltd.,* 126 B.R. 535 (Bankr. S.D.Ohio 1991). Such motions also should not be used to raise arguments which were or could have been raised before judgment was issued. *O'Neal v. Kennamer,* 958 F.2d 1044 (11th Cir.1992). Parties who receive an adverse ruling are not encouraged to, as a matter of course, request the court "to rethink what the Court had already thought through—rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va. 1983).

The § 523(a)(6) issue addressed in the Order was decided based upon a relatively recent decision by the U.S. Supreme Court in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In Plaintiff's motion for reconsideration, Plaintiff presented several cases decided by lower courts applying the principles set forth in *Geiger.* This court has reviewed additional cases which, although not directly on point with the facts of this case, provide examples of other courts' application of the principles set forth in *Geiger.*

▉ Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. In *Geiger,* the Supreme Court examined the meaning of *willful* in § 523(a)(6): "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate

or intentional act that leads to injury." *Id.* at 977. The facts the Supreme Court addressed in *Geiger* involved the dischargeability of claims against the debtor-physician resulting from a medical malpractice action.[3] The *Geiger* opinion answered the very important question presented in the context of the facts presented to it, but, as is frequently the case, the opinion raised and left unexplained several other important questions.

One of the questions not fully addressed in *Geiger* is the manner in which its principles should be applied in connection with other claims under § 523(a)(6), such as conversion of collateral, which is perhaps the most common factual situation presented in § 523(a)(6) proceedings. Specifically, does *Geiger* require proof of a subjective intent to cause the injury to the creditor or proof of an objective substantial certainty that the injury would result from the debtor's conduct? Another question is whether the term "malicious" retains any meaning separate from and in addition to the meaning of the term "willful."

The Fifth Circuit Court of Appeals has issued two opinions interpreting *Geiger.*[4] The first, *Texas v. Walker,* 142 F.3d 813 (5th Cir.1998), concerned a claim by the State of Texas against a debtor who was a heart surgeon and tenured faculty member at the University of Texas Health Science Center at Houston. During the course of his employment, the debtor had on numerous occasions received professional fees when he testified as an expert witness in court or at depositions or provided legal

---

Plaintiff's motion, which was filed eleven days after the entry of the Order was not timely filed under Bankruptcy Rules 9023 and 7052. Pursuant to Bankruptcy Rule 9024, however, a movant may seek relief from a judgment or order if the motion is filed within a reasonable time. Plaintiff's motion was timely under Bankruptcy Rule 9024.

3. The debtor's negligent treatment of a foot infection resulted in the amputation of the creditor's leg below the knee. The debtor carried no malpractice insurance.

4. Five other Circuit Court cases have cited *Geiger* but without any significant discussion or explanation of its holding: *Roumeliotis v. Popa,* 140 F.3d 317 (1st Cir.1998); *Harrell v. Merchant's Express Money Order Co.,* 173 F.3d 850 (4th Cir.1999); *Caton v. Trudeau,* 157 F.3d 1026 (5th Cir.1998); *Abbo v. Rossi, McCreery & Associates, Inc.,* 168 F.3d 930 (6th Cir.1999); *Fischer v. Scarborough,* 171 F.3d 638 (8th Cir.1999).

consultations as an expert. The debtor retained those professional fees despite a provision in his contract of employment that required that he turn over such fees to the state. The debtor alleged he was unaware of that provision in his contract and had not received the later memorandum reminding faculty members of the obligation to turn over such fees.

The *Walker* court began its analysis with an explication of the standard set forth in *Geiger* and the recognition that neither a breach of contract nor the tort of conversion necessarily involves a willful and malicious injury. The court determined that a question of fact existed as to the debtor's knowledge or understanding of his obligation to turn over the professional fees. The court suggested that if the trier of fact determined that the debtor knew of his duty to turn over the fees, the debt may be nondischargeable. In addition to the principles defined in *Geiger*, the *Walker* court relied upon its pre-*Geiger* opinion in *In re Delaney*, 97 F.3d 800 (5th Cir.1996), in which the court held, "[I]ntent to injure may be established by a showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury." *Id.* at 802.

A more recent case from the Fifth Circuit Court of Appeals construing *Geiger* is *Miller v. J.D. Abrams, Inc.*, 156 F.3d 598 (5th Cir.1998), *cert. denied* —— U.S. ——, 119 S.Ct. 1249, 143 L.Ed.2d 347 (1999). *Miller* involved an action against a debtor for misappropriation of proprietary information or misuse of trade secrets. The *Miller* court noted that, although *Geiger* suggested a relationship between § 523(a)(6) and intentional torts, the *Geiger* standard is not necessarily satisfied by simply proving the elements of an intentional tort.

> Merely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful. This case illustrates the distinction, since misappropriation of proprietary information and misuse of trade secrets

are wrongful regardless of whether injury is substantially certain to occur.

*Miller*, 156 F.3d at 604. The *Miller* court opined that "either objective substantial certainty or subjective motive meets the Supreme Court's definition of 'willful ... injury' in § 523(a)(6)." *Id.* at 603. The court found that, although a state court found that the debtor had acted without subjective ill will towards the creditor, the debt could still be found to be nondischargeable if the trier of fact in the dischargeability proceeding found the debtor's acts were substantially certain to cause injury.

The *Miller* court continued with a discussion regarding what, if any, meaning should be ascribed to the term "malicious" after the *Geiger* decision. The court discussed whether the term "malicious" in § 523(a)(6) may mean without just cause or excuse, as has been suggested by other courts. The court concluded that if a debtor's act is performed with just cause or excuse, it cannot have been performed with the substantial certainty that it would cause harm. As a result, the *Miller* standard under § 523(a)(6) is a unitary standard, so that an act is "willful" *and* "malicious" if performed with either an objective substantial certainty of harm or a subjective motive to cause harm.

In the case of *Mitsubishi Motors Credit of America, Inc. v. Longley*, 235 B.R. 651 (6th Cir. BAP 1999), the court addressed an unusual factual situation. The debtor had backed out of an illegal drug transaction, but when the armed drug dealer demanded $16,000 from the debtor (as remuneration for the failed drug deal), to avoid the threatened physical harm to himself and his wife, the debtor surrendered his car to the drug dealer. The drug dealer accepted the car and the debtor told him to leave and never return or the debtor would call the police. The car, of course, was Mitsubishi's collateral for a loan to the debtor.

In deciding whether the debtor's disposal of the car was a willful and malicious injury to Mitsubishi, the court explained that the *Geiger* standard for "willful" under § 523(a)(6) is the same for conversion as for any other type of injury. The intent to injure may be established by evidence of the debtor's knowledge of the creditor's lien rights and the debtor's knowledge that his conduct would cause the particularized injury. The action was remanded to the bankruptcy court for further findings of fact because the only evidence of the debtor's intent in connection with disposal of the car was the debtor's desire to avoid the threatened physical harm. The court did not instruct whether, if the factfinder concluded the debtor knew of the creditor's lien rights and knew that his conduct would destroy those lien rights but that the debtor acted with the specific intent only to avoid physical harm, one set of facts would prevail over the other.

Several bankruptcy court decisions have discussed how *Geiger* has affected application of the willful and malicious elements of § 523(a)(6). In *Florida Outdoor Equipment, Inc. v. Tomlinson,* 220 B.R. 134 (Bankr.M.D.Fla.1998), the plaintiff sold equipment to the debtor as inventory for the debtor's resale through his business. The plaintiff retained a security interest in the goods. Subsequently, when the debtor closed the business, he surrendered the inventory to the plaintiff. The plaintiff then invoiced the debtor for the missing inventory. Prior to the debtor closing his business, his payments to the plaintiff had been late, and the plaintiff knew that the debtor had sold some of the goods without remitting the proceeds to the plaintiff but had continued to ship goods to the debtor. The contract between the plaintiff and the debtor had not required segregation of the proceeds from other income from the business.

The court determined that the *Geiger* definition of willful as an intent to cause injury includes acts substantially certain to cause injury. The court concluded that the plaintiff had shown only that the debtor was trying to stay in business and had no intent to injure the plaintiff when he failed to remit the proceeds from the sale of the goods in which the plaintiff had a security interest. In holding that the plaintiff had failed to establish a willful and malicious injury, the court noted the plaintiff had failed to adequately protect its interest because it failed to require segregation of the proceeds and because it took no action when its inspections showed the debtor had failed to appropriately remit the proceeds from the sale of the plaintiff's collateral. *See also National City Bank v. Wikel,* 229 B.R. 6 (Bankr.N.D.Ohio 1998).

The case of *First Liberty Bank v. La-Grone,* 230 B.R. 900 (Bankr.S.D.Ga.1999) also concerned conversion of collateral. The debtor had sold a boat in which the bank had a security interest. Recognizing that the burden of proof is on the creditor, the court stated that a willful and malicious injury may be shown by proving either a subjective intent to harm or an objective substantial certainty that harm would result. The court suggested that the debtor's intent could be vitiated by a prior course of dealing between the parties which gave the debtor the mistaken belief that selling the collateral and retaining the proceeds was permitted. No evidence of any such course of dealing was presented, however, and the court found the debt to be nondischargeable under § 523(a)(6).

A case cited by Plaintiff is *McAlister v. Slosberg,* 225 B.R. 9 (Bankr.D.Me.1998). In that case, the debtor, who was an attorney, had been employed by the plaintiff to prosecute an appeal of a judgment entered against the plaintiff in a paternity action. The debtor allowed the appeal to be dismissed for want of prosecution and concealed that fact from the plaintiff. In a lengthy discussion about the new standard set forth in *Geiger,* the court opined that the *Geiger* standard appeared to include the "malice" element in § 523(a)(6) as previously defined, but, to avoid rendering the term "malicious" superfluous, accorded to

it a meaning requiring a showing that the debtor acted without just cause or excuse.

The case of *Deere & Company v. Persinger*, 1998 WL 542326 (Bankr.N.D.Ohio 1998), provides an illustration of perhaps the type of just cause or excuse that may be sufficient to allow a debtor to avoid nondischargeability under § 523(a)(6). In *Persinger*, the plaintiff had financed the debtor's purchase of a backhoe and trailer. The debtor sold the backhoe because it kept breaking down. He sold it with the knowledge and assistance of the dealer who had sold it to him and while the backhoe was in the dealer's repair shop. In exchange for the backhoe, the debtor received a car, a small trailer and $5,000. The debtor stated he believed the purchaser would pay the plaintiff. The court concluded that the debtor's mistaken belief that the purchaser would pay off the amount owed to the plaintiff negated any intent to harm. Additionally, the court cited the unreliability of the backhoe, i.e. its frequent need of repair, as just cause or excuse for the sale, noting that a debtor's knowing breach of contract does not constitute a willful and malicious injury.

In the case of *America First Credit Union v. Gagle*, 230 B.R. 174 (Bankr. D.Utah 1999), the court explored the two types of injury described in § 523(a)(6), i.e. to the creditor or to the property of the creditor. In *Gagle*, the credit union had loaned money to the debtor secured by the debtor's custom pick-up truck. At the time of the loan, the value of the truck far exceeded the amount loaned to the debtor. Subsequently, in an effort to raise cash, the debtor sold off parts of the truck until nothing was left. In evaluating these facts in light of § 523(a)(6), the court noted the Tenth Circuit's standard for the "malice" element to be an act performed without justification or excuse. As an example of justification or excuse, the court described a circumstance in which the parties' course of dealing could suggest the creditor's consent to the debtor's conduct. The court also noted that a knowing breach of contract does not constitute a willful and malicious injury.

The *Gagle* court went on to analyze the debtor's conduct, first with respect to the credit union, and then with respect to the credit union's property interest. The court found that, as to the credit union, the debtor's actions were not willful. The debtor acted in response to an economic crisis and he intended to replace the parts he sold. He also intended to continue making payments to the credit union. The debtor may have intended to breach his contract with the credit union but he did not intend to harm the credit union. On the other hand, the debtor did intend to injure the truck and the credit union's interest in it. The court found the debtor's deliberate destruction of the truck was definitive of an intent to injure and was accomplished without justification or excuse.

■ The consensus among courts addressing the issue since the entry of the *Geiger* opinion appears to be that a willful injury under § 523(a)(6) may be shown by proof of the debtor's subjective motive to cause injury or by an objective substantial certainty that the conduct would cause injury. Whether or not the term "malicious" has been subsumed in the *Geiger* standard or retains meaning separate from "willful," the concept that justification or excuse could negate a debtor's intent to injure appears to have been integrated into § 523(a)(6).

■ This post-*Geiger* case law does not persuade this court that Plaintiff has sustained its burden of proof in a summary judgment motion to show the material facts are undisputed and Plaintiff is entitled to judgment as a matter of law. As noted in the Order, evidence exists that the parties' course of dealing may have prompted Debtor to act as he did. He knew he could not pay Plaintiff and other creditors except with the proceeds from the sale of the Grayson House. He knew he would not receive those proceeds unless

he executed the contractor's affidavit. He used the proceeds from the sale to pay other creditors but did not pay Plaintiff. The evidence is unclear whether Plaintiff knew of the practice of executing a false contractor's affidavit in order to obtain sale proceeds to pay subcontractors and suppliers. The evidence does show that Plaintiff invoiced Debtor for materials and labor provided for more than one of Debtor's contracted projects and the course of dealing between Debtor and Plaintiff may have led Debtor to believe that Plaintiff had or would consent to his actions.

As in *Gagle*, the evidence could support an inference that Debtor acted without the intent to injure Plaintiff. Debtor was attempting to maintain his business as a going concern and appears to have intended to pay Plaintiff but simply ran out of money. Debtor does appear to have willfully deprived Plaintiff of its lien rights, but as discussed above, Debtor may have done so in reliance upon the parties' prior course of dealing. Additionally, it is unclear whether a subcontractor's state law right to file a lien is a property interest within the meaning of § 523(a)(6). This court is not prepared to conclude on summary judgment that Debtor acted willfully and maliciously without justification or excuse. Accordingly, it is hereby

ORDERED that Plaintiff's motion for reconsideration is denied.